# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:24-cv-21430-DPG

**Bankruptcy Case Nos.**
**Case No. 19-22744-BKC (LMI), Case No. 20-10996-BKC (LMI)**
**Jointly Administered Under (LMI) Case No. 19-22744-BKC**

Andrew Franzone, both individually and Derivatively on behalf of the FF
Fund Liquidating Trust and the F5 Liquidating Trust,

*Plaintiffs-Appellants*,

**vs.**

Soneet R. Kapila, FF Fund Liquidating Trust, F5 Liquidating Trust,

*Defendants-Appellees*.

### [CORRECTED] RESPONSE BRIEF OF APPELLEE

On Appeal from the United States Bankruptcy Court for the
Southern District of Florida, Miami Division

W. Barry Blum / FBN 379301
bblum@venable.com
Paul J. Battista / FBN 884162
pjbattista@venable.com
**VENABLE LLP**
*Attorneys for Appellee Soneet R. Kapila,*
*Liquidating Trustee of the Liquidating Trusts*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349.2300
Facsimile: (305) 349.2310

**APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

The following persons, associated persons, firms, partnerships, and/or corporations that may have a financial interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to the parties:

a) Soneet R. Kapila, as Liquidating Trustee of the FF Fund Liquidating Trust and the F5 Liquidating Trust (Appellee);

b) Kevin McCoy (Financial Advisor for Appellee);

c) KapilaMukamal, LLP (Financial Advisor for Appellee);

d) Paul J. Battista, Esq. (Counsel for Appellee);

e) W. Barry Blum, Esq. (Counsel for Appellee);

f) Mariaelena Gayo-Guitian, Esq. (Counsel for Appellee);

g) Heather L. Harmon, Esq. (Counsel for Appellee);

h) Eric D. Jacobs, Esq. (Counsel for Appellee);

i) Venable LLP (Counsel for Appellee);

j) Joseph Corrozzo, Esq. (Counsel for Appellant)

k) Andrew T. Franzone (Appellant)

Pursuant to Federal Rule of Bankruptcy Procedure 8012, no publicly held corporation owns ten percent or more of the stock of any of the Appellees herein.

<u>**PARTIES, ABBREVIATIONS, AND REFERENCES**</u>

Generally, in this Response Brief:

Appellant Andrew Franzone will be referred to as either "**Appellant**" or "**Franzone**."

Appellee Soneet Kapila, as Liquidating Trustee, will be referred to as "**Trustee**."

Record citations included in Appellant's Appendix [docketed as DE 44-1] will be to the specific page[s] of the Appendix in the form: "**A.___.**"

Record citations included in Appellee's Supplemental Appendix, filed with this Response Brief, will be to the specific page[s] of the Supplemental Appendix in the form: "**Supp.A.___.**"

Record citations to documents not in either Appellant's Appendix or Appellee's Supplemental Appendix will be to the specific docket entry in the Bankruptcy Court docket [Case No. 19-22744-BKC] in the form "**ECF ___**" or to the specific docket entry in this action in the form "**DE ___.**"

References to key filings, other documents, or items cited extensively cited throughout this Response Brief will be as follows:

***Docket Entries***

(i)   "**Amended Plans**" means the Amended Chapter 11 Reorganization Plans filed in the two underlying bankruptcy cases as ECF 246 [A.54] and ECF 247 [A.135].

(ii)   "**Disclosure Statement**" means the *Second Amended Disclosure Statement for First Amended Chapter 11 Plans of Reorganization Proposed by FF Fund I, L.P. and F5 Business Investment Partners, LLC* filed as ECF 256, that is also Supp.A.001-095.

(iii)   "**Confirmed Plans**" means the Second Amended Chapter 11 Plan of Reorganization filed in each underlying bankruptcy case as ECF 468 [A.286ff.] and ECF 469 [A.359ff.]

(iv)   "**Confirmation Order**" means the *Order Confirming Debtors' Second Amended Plans of Reorganization Dated May 18, 2021* entered on June 4, 2021, as ECF 494 [A.432].

(v) "**Approval Motion**" means the *Expedited Motion for Authority to Accept Tender Offer For Preferred Shares in Coreweave, Inc., and Liquidate Some or All of Such Preferred Shares Pursuant to 11 U.S.C. 363* filed on November 14, 2023, as ECF 629 [A.466], seeking authority to sell the Coreweave shares

(vi) "**Coreweave Sale Order**" is the Bankruptcy Court's Order entered November 17, 2023, as ECF 633 [A.532].

(vii) "**Status Quo Motion**" means the letter motion sent to the bankruptcy judge on November 29, 2023, docketed as ECF 638 [A.568ff].

(viii) "**Reversal Motion**" means the *Emergency Motion to Reverse Transactions Related to Coreweave, Inc.* docketed as ECF 649 [A.735].

(ix) "**February 1 Order**" means the Bankruptcy Court's Order Denying Emergency Motion to Reverse Transactions Related to Coreweave, Inc, entered February 1, 2024, as ECF 665 [A.913]

(x) "**February Notice of Appeal**" is the Notice of Appeal filed on February 15, 2024, as ECF 670 [A.915] by Andrew Franzone individually.

(xi) "**April Notice of Appeal**" is the Notice of Appeal filed on April 30, 2024, as ECF 703 [A.921] by Andrew Franzone "derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust."

(xii) "**Leave Motion**" means *Motion for Leave to Appeal the Order Denying Reversal Motion* filed on February 15, 2024, by Andrew Franzone individually as ECF 670.

(xiii) "**Rule 8009 Statement**" means either *Statement of the Issues to be Presented on Appeal* filed by Appellant in the Bankruptcy Court as ECF 716 [Supp.A.165] and ECF 717 [Supp.A.166].

(xiv) References to the Brief of Appellants, filed as DE 44, will be to "DE 44."

## *Other References*

(xv) "**Coreweave**" means Coreweave Inc.

(xvi) "**Coreweave Sale**" is the sale in November 2023 by the Trusts of shares of Coreweave stock as part of a tender offer that was approved by the Bankruptcy Court in the Coreweave Sale Order that is at A.532ff.

(xvii) "**Hersch/Blake Mallen Trust claim transfer**" means the claims transfer effected in 2022 that is the subject of Point B in Appellant's Initial Brief, at DE 44 p.15**.**

All emphases, denoted by <u>underscoring</u>, are added unless otherwise noted.

# **TABLE OF CONTENTS**

APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................. CIP-1

PARTIES, ABBREVIATIONS, AND REFERENCES ............................................. i

STATEMENT OF JURISDICTION........................................................................... 1

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW ..................... 1

    1.    Whether Appellant's blanket Rule 8009 Statement raising only the issue of "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to Core Weave, Inc." waived the issues raised for the first time in Points A and B of Appellant's Brief challenging: (a) the sealing of court filings under 11 U.S.C. §107(b); (b) the Bankruptcy Court's decision not to address Appellant's challenge in the Reversal Motion to the validity of the 2022 Hersch/Blake Mallen Trust claim transfer that is irrelevant and unrelated to the Coreweave Sale Order ......................................... 2

    2.    If preserved for appeal, whether Appellant has demonstrated the Bankruptcy Court abused its discretion by granting the Trustee's request under 11 U.S.C. §1107(b) to seal filings related to the proposed Coreweave Sale when public disclosure of the transaction would have violated the Trustee's contractual obligations to Coreweave or put beneficial interest holders at risk of being exploited by third-party claim traders ................................................................................. 3

    3.    If preserved for appeal, whether Appellant has demonstrated reversible error based on the Bankruptcy Court not addressing the merits of Appellant's challenge to the 2022 Hersch/Blake Mallen Trust claim transfer that was neither addressed nor decided in the Coreweave Sale Order and is immaterial to the Trustee's business decision to sell the Coreweave stock in November 2023 ....................................................................................... 4

4.    Whether Appellant met his burden to show that the Bankruptcy Court abused its discretion by accepting the Trustee's business decision to sell up to 100% of the Coreweave stock in November 2023 ....................................4

STATEMENT OF THE FACTS AND THE CASE ...................................................5

*The Bankruptcy Cases and Confirmed Plans Implementing the Liquidating Trust Alternative* ............................................................5

*The Liquidating Trust Agreements Implemented by the Confirmed Plans and Confirmation Order* ........................................................7

*Investments Transferred to the Liquidating Trusts* .........................................9

*The Approval Motion, Requests for Sealing Certain Filings and Proceedings, and Approval of the Coreweave Sale* ....................................10

*The Reversal Motion* ........................................................................13

*The January 16, 2024, Hearing on the Reversal Motion* ..............................15

*The Notices of Appeal* .....................................................................22

SUMMARY OF ARGUMENT ...............................................................23

ARGUMENT ...................................................................................26

I.    Appellant's first two arguments—challenging the sealing of the Coreweave Sale filings and transcript (Point A) and arguing that the Bankruptcy Court was required to make findings or conclusions about the "Hersch/Blake Mallen Trust claim transfer" in 2022 (Point B)—are not properly before this Court. They were not neither set forth in nor inferable from Appellant's generic Rule 8009 Statement that merely wonders whether the Bankruptcy Court "properly denied" Appellant's Reversal Motion ...........................................26

II.   Even if the bankruptcy court's sealing order had been properly raised in the Rule 8009 statements, Appellant fails to show: (a) the sealing of filings prevented him from appearing at the November 15 hearing and objecting to the Coreweave stock sale; or (b) that the bankruptcy judge abused her discretion in sealing for 30 days the Coreweave Sale-related filings and transcript under 11 U.S.C. §107(b) .......................31

    A.   Franzone's argument that the sealing of filings prevented him from appearing at the November 15 hearing to question the Trustee or object to the Coreweave Sale is frivolous; Franzone admits he had notice of the hearing, but he could not travel to Miami because of his pre-trial release travel restrictions imposed in his criminal case ......................................................32

    B.   Appellant misstates the applicable standard for sealing filings in bankruptcy cases and fails to demonstrate the Bankruptcy Court abused its broad discretion to protect information from public disclosure under 11 U.S.C. §107(b) ......................................................................................33

        a.   Appellant fails to address the Trustee's statutory right under 11 U.S.C. §107(b) to protection from disclosure of the Coreweave sale information................34

        b.   Section 107(b) requires that documents be sealed if they are confidential commercial information, and the bankruptcy court lacks discretion to deny protection if the statute is invoked..................................35

    C.   The Trustee's consideration of the Coreweave tender offer involving consideration of confidential financial information received from Coreweave and the potential increase in the value of beneficial interests was confidential commercial information the Bankruptcy Court was required to seal on the Trustee's request.................38

III.     Even if Appellant's Point B was not waived: (a) the argument is meaningless as it does not seek reversal of the Coreweave Sale Order, the only relief adjudicated in the February 1 Order; and (2) any claimed error "regarding the challenged Hersch/Blake Mallen Trust claim transfer" would be harmless error because the ownership of a specific beneficial interest was not decided in the Coreweave Sale Order and is irrelevant to the reasonableness of the Trustee's business decision to sell the Coreweave stock ............................................................................43

         A.     The Bankruptcy Court properly declined to decide the merits of Appellant's challenge to the validity of the Hersch/Blake Mallen Trust because the issue was neither addressed nor decided in the Coreweave Sale Order Appellant sought to "reverse." In any event, the refusal to reach the merits of the claim transfer could not be reversible error because the issue would have no impact on the Bankruptcy Court's Coreweave Sale Order or the February 1 Order .................................................44

IV.      The Bankruptcy Court's decision to accept the Trustee's business judgment that the Coreweave Sale was in the best interests of all interested parties is a factual finding this Court reviews only for clear error. The Bankruptcy Court did not shift any burden; Appellant utterly failed to provide any factual support for his reckless accusation that the Trustee acted in bad faith and abused his discretion in deciding to monetize $55.26 million of Coreweave stock .....................................48

CONCLUSION ....................................................................................51

CERTIFICATE OF SERVICE ................................................................52

CERTIFICATE OF COMPLIANCE ........................................................53

# TABLE OF AUTHORITIES

*A C & S Inc.*, *In re*,
   775 F. App'x 78 (3d Cir. 2019) ................................................................3

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985)................................................................................2

*Anjum v. Mukamal (In re Kumar),*
2016 WL 7178984 (S.D. Fla. Dec. 9, 2016)....................................1, 26, 29

*ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.),*
650 F.3d 593 (5th Cir. 2011) .................................................................49

*Barney's, Inc.*, *In re*,
201 B.R. 703 (Bankr. S.D.N.Y. 1996)....................................................37

*Borders Group, Inc., In re,*
462 B.R. 42 (Bankr.S.D.N.Y.2011).........................................................38

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel*
*Corp.),*
722 F.2d 1063 (2d Cir.1983)............................................................49, 50

*Dana Corp.*, *In re,*
   412 B.R. 53 (Bankr. S.D.N.Y. 2008)....................................................36

*Diplomat Construction, Inc.*, *In re,*
481 B.R. 215 (Bankr. N.D. Ga. 2012) ....................................................49

*El Toro Exterminator of Florida, Inc.*, *In re,*
2006 WL 2882519 (Bankr. S.D. Fla. July 6, 2006)................................38

*Father M v. Various Tort Claimants (In re Roman Catholic Archbishop),*
661 F.3d 417 (9th Cir. 2011) .......................................................34, 35, 36

*Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald),*
428 B.R. 872 (9th Cir. BAP 2010).....................................................5, 50

*F.T.C. v. AbbVie Products LLC*,
713 F.3d 54 (11th Cir. 2013) ...............................................................................4, 41

*Ga. Dep't of Rev. v. Mouzon Enters., Inc. (In re Mouzon Enters., Inc.)*,
610 F.3d 1329 (11th Cir. 2010) ...................................................................................2

*Genesis Global Holdco, LLC*, *In re*
652 B.R. 618 (Bankr. S.D.N.Y. 2023) ......................................................................38

*Gitto v. Worcester Telegram & Gazette Corp.* (*In re Gitto Global Corp.*),
422 F.3d 1 (1st Cir. 2005) ..........................................................................................34

*Gulf States Steel, Inc. of Alabama*, *In re*,
 285 B.R. 497 (Bankr. N.D. Ala. 2002) .....................................................................50

*Holton v. Thomasville Sch. Dist.*,
425 F.3d 1325 (11th Cir. 2005) ............................................................................... 1-2

*Johnson v. NPAS Solutions*,
975 F.3d 1244 (11th Cir. 2020) ...........................................................................33, 47

*Knott*, *In re*,
2015 WL 251705 (Bankr. M.D. Fla. Jan. 20, 2015)...............................5, 46, 48, 49

*Lomas Financial Corp.*, *In re*,
1991 WL 21231 (S.D.N.Y. Feb. 11, 1991).........................................................39, 40

*Marigrove, Inc. v. Pinto (In re Transbrasil S.A. Linhas Aereas)*,
644 F. App'x 959 (11th Cir. 2016) ..............................................................36, 37, 39

*Motions for Access of Garlock Sealing Technologies LLC*, *In re*,
488 B.R. 281 (D. Del. 2013), *as corrected* (Mar. 15, 2013) ......................................3

*Motions Seeking Access to 2019 Statements*, *In re*,
585 B.R. 733 (D. Del. 2018)........................................................................................3

*Neal v. Kansas City Star (In re Neal)*,
461 F.3d 1048 (8th Cir. 2006) ...............................................................................3, 37

*Nunn*, *In re,*
 49 B.R. 963 (Bankr. E.D. Va. 1985)........................................................................40

*Official Committee of Unsecured Creditors v. Bouchard Transportation
Co. (In re Bouchard Transportation Co.)*,
74 F.4th 743 (5th Cir. 2023) ....................................................................................49

*Official Committee of Unsecured Creditors v. Enron Corp. (In re Enron
Corp.)*,
335 B.R. 22 (S.D.N.Y. 2005)..............................................................................5, 50

*Perez-Guerrero v. U.S. Attorney General*,
717 F.3d 1224 (11th Cir. 2013) ..............................................................................41

*Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*,
191 B.R. 675 (Bankr. N.D. Ohio 1995)..............................................................35, 37

*Phenomenon Marketing & Entertainment, LLC*, *In re,*
2023 WL 349426 (Bankr. C.D. Cal. Jan. 20, 2023) ................................................35

*Restigouche, Inc. v. Town of Jupiter*,
59 F.3d 1208 (11th Cir. 1995) .................................................................................33

*Robbins v. Tripp*,
510 B.R. 61 (E.D. Va. 2014)....................................................................................39

*Romero v. Drummond Co.*,
480 F.3d 1234 (11th Cir. 2007) ...............................................................................34

*Rush v. JLJ Inc. (In re JLJ Inc.)*,
988 F.2d 1112 (11th Cir. 1993) .................................................................................1

*Seidling v. Kelly, (In re Seidling)*,
2014 WL 11430871 (S.D. Fla. June 27, 2014), *aff'd*, 611 F. App'x 668
(11th Cir. 2015)........................................................................................................30

*Seidling v. Kelly (In re Seidling)*,
611 F. App'x 668 (11th Cir. 2015) .........................................................2, 26, 29, 30

*Solomon v. Liberty County Commissioners*,
221 F.3d 1218 (11th Cir. 2000) ..................................................................2

*Taiyo Corp.*, *In re*
1993 WL 13003867 (Bankr. S.D. Ga. Sept. 30, 1993).................................. 39-40

*Teras Breakbulk Ocean Navigation Enterprises, LLC v. Angueira (In re Teras Breakbulk Ocean Navigation Enterprises, LLC)*,
658 B.R. 611 (S.D. Fla. 2024) ............................................4, 5, 46, 48, 50

*Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.*),
492 B.R. 162 (Bankr. S.D.N.Y. 2013) ........................................................39

*Udeh v. Winn-Dixie Montgomery, LLC*,
767 F. App'x 851 (11th Cir. 2019) .............................................................46

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*,
21 F.3d 24 (2d Cir. 1994)..........................................................36, 37, 38

*Warner Communications, Inc.*,
435 U.S. 589 (1978).................................................................34, 41, 42

*Windstream Holdings Inc.*, *In re*,
614 B.R. 441 (S.D.N.Y. 2020)....................................................................40

## **Other Authorities:**

11 U.S.C. §107 ........................................................................28, 34

11 U.S.C. §107(b) ........................................................................*passim*

11 U.S.C. §107(b)(1)................................................................35, 38, 39, 42

11 U.S.C. § 363 ........................................................................12, 48

28 U.S.C. § 157 ..............................................................................1

28 U.S.C. § 158 ..............................................................................1

28 U.S.C. § 1334 ..................................................................................................1

Fed. R. Bankr. P. 9018 ..............................................................................35, 36, 42

Fed. R. Bankr. P. 8002 ..............................................................................................1

## STATEMENT OF JURISDICTION

The Bankruptcy Court had subject matter jurisdiction under 28 U.S.C. §§157, 1334. The Trustee agrees this appeal of the February 1 Order, entered on February 1, 2024, is "from a final order," and this Court thus has jurisdiction under 28 U.S.C. §§158 and 1334 based <u>only</u> on the February 15 Notice of Appeal filed timely by Andrew Franzone individually.

The Court does not have jurisdiction over the appeal purportedly filed by Franzone "derivatively on behalf of the FF Liquidating Trust and the F5 Liquidating Trust" based on the April 30 Notice of Appeal. The April 30 Notice of Appeal was not filed timely under Fed. R. Bankr. P. 8002 and cannot invoke this Court's jurisdiction to review the February 1 Order. *See* DE 11.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

When reviewing bankruptcy court orders, "a district court functions as an appellate court." *Rush v. JLJ Inc. (In re JLJ Inc.)*, 988 F.2d 1112, 1116 (11th Cir. 1993). On all issues, this Court "reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*, and it cannot make independent factual findings." *Anjum v. Mukamal (In re Kumar)*, No. 15-CV-21159, 2016 WL 7178984, at *2 (S.D. Fla. Dec. 9, 2016) (Gayles, J.) (citing *Torrens v. Hood (In re Hood)*, 727 F.3d 1360, 1363 (11th Cir. 2013)). "Clear error is a highly deferential standard of review." *Holton v. Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th

1

Cir. 2005). "If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the [district] court may not reverse [because] [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574 (1985); *accord Solomon v. Liberty Cnty. Comm'rs*, 221 F.3d 1218, 1227 (11th Cir. 2000).

***Issues***

 1. Whether Appellant's blanket Rule 8009 Statement raising only the issue of "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to Core Weave, Inc." waived the issues raised for the first time in Points A and B of Appellant's Brief challenging: (a) the sealing of court filings under 11 U.S.C. §107(b); (b) the Bankruptcy Court's decision not to address Appellant's challenge in the Reversal Motion to the validity of the 2022 Hersch/Blake Mallen Trust claim transfer that is irrelevant and unrelated to the Coreweave Sale Order.

 Whether Appellant's Rule 8009 Statement adequately raises or infers an issue for review is a mixed question of law and fact this Court must decide Court in the first instance. "[T]he interpretation of a Federal Rule of Bankruptcy Procedure" is a legal question subject to *de novo* review. *Ga. Dep't of Rev. v. Mouzon Enters., Inc. (In re Mouzon Enters., Inc.)*, 610 F.3d 1329, 1332 (11th Cir. 2010). Whether an issue is "inferable" from a Rule 8009 Statement involves case-specific fact questions and the specific language of the Rule 8009 Statement. *Cf. Seidling v. Kelly (In re Seidling)*, 611 F. App'x 668, 670 (11th Cir. 2015) (where Rule 8009 statement

"merely accuse[d] the bankruptcy court of having 'erred' . . . the district court did not err in holding [specific grounds for error] were waived.").

2.    *If preserved for appeal*, whether Appellant has demonstrated the Bankruptcy Court abused its discretion by granting the Trustee's request under 11 U.S.C. §1107(b) to seal filings related to the proposed Coreweave Sale when public disclosure of the transaction would have violated the Trustee's contractual obligations to Coreweave or put beneficial interest holders at risk of being exploited by third-party claim traders.

Bankruptcy court orders under 11 U.S.C. §107(b) are "committed to the bankruptcy court's discretion" and are reviewed "for an abuse of that discretion," and the issue of whether information falls within a protected category under §107(b) "presents a factual question reviewed for clear error." *Neal v. Kan. City Star (In re Neal)*, 461 F.3d 1048, 1052, 1055 (8th Cir. 2006). *See In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 759 (D. Del. 2018) (affirming bankruptcy court's restrictions on parties' access to filed documents because "[t]he Bankruptcy Court did not abuse its discretion."), *aff'd sub nom., In re A C & S Inc*, 775 F. App'x 78, 80 (3d Cir. 2019); *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 291–92 (D. Del. 2013), *as corrected* (Mar. 15, 2013) (§107(b) orders sealing "judicial records from public disclosure are subject to review for abuse of discretion"). Even under stricter common law standards, the Eleventh Circuit has stated that trial "courts are in a superior position to decide whether to enter or modify protective orders [sealing documents], and it is well established that "the decision as

3

to access is one best left to the sound discretion of the trial court." *F.T.C. v. AbbVie Prods LLC*, 713 F.3d 54, 61 (11th Cir. 2013).

    3.    *If preserved for appeal*, whether Appellant has demonstrated reversible error based on the Bankruptcy Court not addressing the merits of Appellant's challenge to the 2022 Hersch/Blake Mallen Trust claim transfer that was neither addressed nor decided in the Coreweave Sale Order and is immaterial to the Trustee's business decision to sell the Coreweave stock in November 2023.

    The Bankruptcy Court's determination that Appellant lacked standing to challenge the Hersch/Blake Mallen Trust claim transfer is a mixed question of law of fact; but the finding that Franzone had no interest in either the transferor or transferee is a factual finding that must be upheld unless clearly erroneous. The ultimate determination under "business judgment" test, without regard to the validity of the claims transfer, "that the Trustee's business judgment was sound . . .  is a factual finding" that "the Court reviews . . . for clear error." *Teras Breakbulk Ocean Navigation Enters., LLC v. Angueira (In re Teras Breakbulk Ocean Navigation Enters., LLC)*, 658 B.R. 611, 619 (S.D. Fla. 2024) (Gayles, J.).

    4.    Whether Appellant met his burden to show that the Bankruptcy Court abused its discretion by accepting the Trustee's business decision to sell up to 100% of the Coreweave stock in November 2023.

    The Bankruptcy Court's decisions to approve the Coreweave Sale and deny the Reversal Motion are measured against the "business judgment test," requiring only that the Trustee had sound business reasons for selling. *See Teras Breakbulk*, 658 B.R. 611, 619 (S.D. Fla. 2024) (applying "business judgment test" to sale

decision); *In re Knott*, No. 6:12-BK-07764-KSJ, 2015 WL 251705, at *2 (Bankr. M.D. Fla. Jan. 20, 2015) (approving asset sale merely requires trustee to "establish sound business reasons for the terms of the proposed sale."). An appellate court reviews a bankruptcy court's sale order for abuse of discretion. *See Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 880 (9th Cir. BAP 2010); *Off. Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27–28 (S.D.N.Y. 2005) (bankruptcy court's finding of adequate business reason for sale must be upheld unless clearly erroneous). Specifically, "[t]he Bankruptcy Court's determination that the Trustee's business judgment was sound and that the [Coreweave Sale] was in the best interest of the Estate is a factual finding" that "the Court reviews . . . for clear error." *Teras Breakbulk*, 658 B.R. at 619.

## STATEMENT OF THE FACTS AND THE CASE

Appellant's fact statement is largely taken from the Trustee's filings below and is mostly accurate, but it omits material facts. This counter-statement will provide omitted material facts while avoiding where possible repetition of Appellant's fact statement.

### *The Bankruptcy Cases and Confirmed Plans Implementing the Liquidating Trust Alternative*

This appeal arises from two jointly-administered Chapter 11 bankruptcy cases, the FF Fund Case filed in September 2019 and the F5 Case filed in January 2020. A.1-53. On February 1, 2021, both Debtors filed the Amended Plans

sponsored by Appellant and FF Fund Management, LLC, Debtor FF Fund I's general partner. A.54-214. The Disclosure Statement approved by the Bankruptcy Court on February 16, 2021, noted "a long standing personal and professional relationship" between Franzone, Dennis Hersch (who invested $34 million with Debtors and held about 70% of all limited partnership interests), and Dennis' son, Gregory Hersch, "the principal and owner of" an investment firm that advised Debtors to invest over "$3.9 million in several investments" (including Coreweave preferred shares.). Supp.A.19, 76-81. The Disclosure Statement referred dozens of times to the Hersches, including litigation against them by the Blake Mallen 2013 Trust. Supp.A.18-20.

The Amended Plans in Article V proposed reorganizations dependent on financial support (a guarantee or exit financing) from FF Fund Management. A.78-82. Article VI also provided for a "Liquidating Trust Alternative" means of Plan implementation. A.82-87. Confirmation was set for April 26-27, 2021. ECF 262. Less than a week before that hearing, Appellant Franzone was arrested on federal securities fraud and wire fraud charges brought in the Southern District of New York; and a few days later, the SEC sued Franzone and FF Fund Management in the same court for securities fraud and aiding and abetting securities fraud and sought injunctive relief, disgorgement, and monetary penalties. A.215-268. Both matters are pending.

6

The criminal charges and SEC action meant FF Fund Management could not provide the financial support contemplated in the Amended Plans; so the Debtors gave notices of their intentions to proceed to confirmation under the "Liquidating Trust Alternative," A.269-285, and they then filed the Confirmed Plans. A.286-431. On June 3, 2021, the Bankruptcy Court entered the Confirmation Order confirming the Confirmed Plans and implementing the Liquidating Trust Alternative. A.432-465. The Confirmation Order was a final order. A.462 ¶25. It was not appealed.

### *The Liquidating Trust Agreements Implemented by the Confirmed Plans and Confirmation Order*

The Confirmed Plans implementing the Liquidating Trust Alternative (first proposed in the February 2021 Amended Plans Franzone sponsored) and the Liquidating Trust Agreement ("LTA") attached to both Plans, A.330-358, gave the Trustee, *inter alia*, the powers to "hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets" and, "in the Liquidating Trustee's reasonable business judgment, to . . . liquidate, dispose of, and/or abandon the Liquidating Trust Assets." A.307 ¶E. The Confirmation Order specifically authorized the Trustee to "dispose of property [and] employ and pay professionals . . . (except as otherwise set forth in the Second Amended Plans) without supervision or approval by the Court." A.455 §8. And the LTA implemented in the Confirmed Plans specifically gave the Trustee the rights to, "at such times and in such manner as he may deem appropriate, transfer, assign, or otherwise dispose of all or any part

7

of the Assets," A.339, §5.1, and "[t]o determine <u>when or on what terms Assets</u>

<u>should be sold</u>, liquidated or otherwise disposed of . . ." A.346 §7.2(a).[1] The LTA

also provides that, subject only to the Confirmed Plans, the Trustee was "empowered

to exercise all rights and powers granted to [him] <u>without need of further Bankruptcy</u>

<u>Court approval.</u>" A.337 §2.5; *see* DE 44 ("the Trustee obtained the sole authority,

among other things, to sell, liquidate, monetize, transfer and/or assign" Trust assets).

Under the confirmed Plans, limited partner investors in the Debtors (essentially

equity) were eligible to become proportional beneficial interest holders in the Trusts.

 The Confirmed Plans filed May 18, 2021, expressly informed all interested

parties and the Bankruptcy Court that:

> The Liquidating Trustee intends to solicit input and information from
> Florence Capital Advisors and Mr. Greg Hersch as to various aspects
> of those certain investments originally brought to the Debtor by
> Florence Capital Advisors as indicated on Exhibit 1 to the Disclosure
> Statement, including in respect of maximizing the value of such
> investments, provided, however, that the Liquidating Trustee shall at
> all times retain the full authority to make all decisions in respect of such
> investments consistent with the powers of the Liquidating Trustee as
> set forth herein.

A.308, 361.

---

[1] The Trustee was required to obtain Bankruptcy Court approval to settle or compromise claims reserved in the Plans or later brought by the Liquidating Trusts. *See* A.307 (court approval required to settle reserved claims); A.313 ("any such settlement shall require the approval of the Bankruptcy Court"); A.421 §7.4 ("settlement of a Cause of Action shall require [Bankruptcy Court] approval after a motion and hearing").

### *Investments Transferred to the Liquidating Trusts*

On the Effective Date, the Liquidating Trusts held mostly illiquid interests in 47 privately-held entities and unsecured notes from early stage or start-up entities or real estate partnerships. A.467. One investment was 250,000 preferred shares in Coreweave that the Debtors had acquired at $1.00/share. A.469-71. In 2022, as part of efforts to value Trust assets, the Trustee signed a Non-Disclosure Agreement ("Coreweave NDA") with Coreweave, under which the Trustee obtained confidential Coreweave financial data. Supp.A.167-70. The Trustee diligently investigated Trust assets and, by mid-2023, collected about $460,000 from distributions and redemptions; that amount, however, was less than creditor claims, making the Estate administratively insolvent.

In late-October 2023, the Trustee was presented with a time-sensitive opportunity to sell as part of a third-party tender offer the Coreweave stock for over $309/share (or up to $77 million), generating a 30,900% return on that investment and proceeds sufficient to pay creditors and administrative expenses in full and distribute funds to beneficiaries at a 2-3x multiple of their total investments. A.471 ¶13. The Trustee, in his business judgment, decided that selling the Coreweave shares eligible for tender by the November 20, 2023, deadline was in the best interests of all interested parties. *Id.* ¶¶14, 19, 20.

***The Approval Motion, Requests for Sealing Certain Filings and Proceedings, and Approval of the Coreweave Sale.***

Despite being authorized under the Confirmed Plans and Confirmation Order to sell assets without court approval, *see* pp.18-19 *supra*, the Trustee, on November 14, 2023, filed under seal the expedited Approval Motion seeking court approval of his decision to sell the Coreweave shares. A.466-515. The Approval Motion disclosed the Trustee's opportunity to sell the Coreweave stock for up to $77 million, noting that the transaction would substantially increase the value of Trust beneficial interests. A.466-68. Because the Trustee: (1) had confidentiality obligations under the Coreweave NDA; and (2) was concerned a public filing would enable third parties to acquire at a discount interests of Trust beneficiaries unaware of the Coreweave transaction, the Trustee requested, and the Bankruptcy Court entered an order under 11 U.S.C. §107(b) allowing the Approval Motion and select other Coreweave-related filings to be filed under seal, with notice and disclosure to the U.S. Trustee. A.518-529. No appeal was taken from any order sealing filings or other documents.

On November 14, the court issued a sealed notice of hearing [DE 625] setting a hearing on November 15, 2023, at 2:30 p.m. Appellant learned that the hearing would take place, and, on November 15, Appellant wrote to the bankruptcy judge referring to the hearing set later that day and requesting the scheduled hearing, that Appellant understood was "about something that has been sealed," be postponed

10

"for at least 21 days." Supp.A.96-97. Appellant's postponement request acknowledged Franzone could not attend the hearing (sealed or otherwise) because his pretrial release terms required him to give "at least 48 hours of notice" to obtain permission to travel to Florida. *Id.*

The bankruptcy court held the noticed hearing on the Approval Motion on November 15. A.537-567. The only issue presented for decision was approval of the Trustee's business decision to sell in a tender offer "up to 100 percent of the fund's interest in Coreweave," and the court acknowledged that any restrictions on claims transfers would be considered separately. A.556. The Trustee confirmed that determinations of beneficial interests or distribution of funds to beneficial interest holders were matters for later consideration. A.551 ("MR. BATTISTA: Once we figure out what all this means, in terms of a distribution, we'll come back to you. To that point we [the Trustee and his professionals] have never scrubbed the limited partnership interest[s].") . Nothing in the Approval Motion addressed the validity or amount of any beneficial interests, and no related issues were before the Court on November 15 or determined in the Coreweave Sale Order. A.466-515, 900-901.

The Trustee personally attended the hearing, and his counsel proffered the Trustee's testimony regarding his business decision to sell the Coreweave shares. A.538-555. The U.S. Trustee's counsel appeared but did not cross-examine the Trustee, stating instead that he was "going to trust [the Trustee's] business

11

judgment." A.557. No other party attended. The Bankruptcy Court found the Trustee's decision to sell up to 100% of the Trusts' CoreWeave shares was "an appropriate exercise of the fiduciary duties the trustee to the beneficiaries of the trust," and "based on the proffer that was made, [] it is more than appropriate to grant the relief completely, meaning that Mr. Kapila may tender—using the exercise of his business judgment, may tender up to 100 percent of the shares" of CoreWeave held by the Trusts." A.558. The court entered the sealed Coreweave Sale Order granting the Trustee's Approval Motion under 11 U.S.C. §363 and based on the Trustee's "best business judgment." A.532-534. On November 17, the bankruptcy court denied Appellant's motion to postpone as moot. ECF 634. No appeal was taken from that order.

Because the Coreweave tender offer was oversubscribed, the Trustee could sell only 182,245 Coreweave shares for $55,526,033. Supp.A.158 ¶22. The Trusts still own 67,755 Coreweave shares that could not be sold in November 2023. *Id.*

On November 29, Appellant Franzone sent the bankruptcy judge the Status Quo Motion, a 127-page, single-spaced letter, with 40 pages of attachments, requesting a "temporary status quo in th[e] action for at least 90 days," and referring to the "roughly 72-hour sealed process . . . from November 14, 2023 through November 17, 2023." A.568-69. Most of the Status Quo Motion was devoted to challenging the unappealed June 2021 Confirmation Order implementing the

"Liquidating Trust Alternative." A.569-694. The court set a December 13, 2023, hearing on the "Motion for Status Quo filed by Creditor Andrew T Franzone (638)." ECF 639.

On December 4, the Trustee, consistent with his concerns about nefarious claims trading raised in his 11 U.S.C. §107(b) sealing requests, filed an *ex parte* emergency motion to temporarily prohibit sales of beneficial interests. Supp.A.98-133. The Bankruptcy Court granted that motion, and the court's Order was served on all interested parties on December 6, 2023. A.134-36. Then, on December 11, the Trustee filed a response to the Status Quo Motion, in which the Trustee "advise[d] the Court and all parties in interest that he ha[d] recently monetized 182,245 shares of Coreweave stock of $55,526,033." Supp.A.158 ¶22. Appellant personally appeared at the December 13 hearing, and the Bankruptcy Court granted, with no objection by the Trustee, Franzone's *sua sponte* request to unseal the filings related to the Coreweave Sale Order. A.735.

### The Reversal Motion

On December 29, 2023, Franzone filed his 28-page, single-spaced Reversal Motion, with 101 pages of exhibits. A.737-865. Though titled an "Emergency Motion to Reverse Transaction Related to Coreweave, Inc.," Appellant asked the Bankruptcy Court for three things wholly-unrelated to the November 2023 Coreweave Sale Order. Two requests for relief related only to <u>future sales</u> of

Coreweave stock and sought to amend the Trustee's powers under the Confirmed Plans and Confirmation Order. A.737 (seeking order requiring the Trustee to obtain court approval after notice and a hearing before selling "the remaining portion" of the Coreweave shares). The third unrelated request for relief sought to have assignment documents used for the Hersch/Blake Mallen Trust claims transfer, completed in April 2022, and not considered as part of the Trustee's business decision to sell Coreweave shares, "deemed to be non-valid as a mechanism for transferring equity of the liquidating trust in this jurisdiction." A.737-740 ¶¶1-3.

The only relief Franzone sought in the Reversal Motion related to the CoreWeave Sale Order was described as follows:

> I would like to respectfully request that the [Coreweave Sale Order] authorizing the sale of shares of Coreweave, ECF # 633, be reversed for bad faith and abuse of discretion by the liquidating trustee based on the originally sealed filings, ECF # 624, 627-629, as well as what happened at the November 15, 2023 hearing at 2:30pm regarding these same 4 originally sealed filings.

A.737. Thus, the Reversal Motion sought to "reverse" the Coreweave Sale Order based on the Trustee's alleged "bad faith and abuse of discretion" purportedly evidenced in "the originally sealed filings" and "the November 15, 2023 hearing." Franzone's Reversal Motion did not address how the Coreweave Sale could be "reversed" without Coreweave or the third-party purchasers before the Bankruptcy Court. The Reversal Motion was heard on January 16, 2024.

14

*The January 16, 2024, Hearing on the Reversal Motion*

Franzone attended the January 16 hearing on the Reversal Motion *pro se*. A.876. He conceded to the Bankruptcy Court he does not "have an interest in any of those two entities," either the transferor or transferee of the Hersch/Blake Mallen Trust claim transfer. A.881, 896. The judge explained, therefore, that Franzone had no standing to challenge the validity of the Hersch/Blake Mallen Trust claim transfer and that the claims transfer had nothing to do with the Coreweave Sale Order he sought to reverse. A.888 (stating Franzone had failed to articulate "anything the Trustee did [or] the Court did in connection with the relief granted.") As Trustee's counsel stated at the hearing:

> whether Mr. Hersch owns the claim or the Blake Mallon Trust owns the claim, it's the same to every other creditor and equity holder in the case. Same claims there. Doesn't matter who owns it, as it relates to everybody else in this case.

A.898.

Nonetheless, the Bankruptcy Court afforded Franzone multiple opportunities to state facts he wanted to present that supported his "bad faith" or "abuse of discretion" charges. Despite being prompted at least seven different times, Franzone failed to articulate any facts relevant to either the Trustee's alleged bad faith or the court's decision to defer to the Trustee's business judgment. The bankruptcy court began by explaining to Franzone:

THE COURT: . . . in your [Reversal Motion] you talk a lot about the

> Trustee abusing his business judgment, but you don't have any specific—at least not that I could find—points where you state that the Trustee abused his discretion, other than saying he abused his discretion.

A.879. Franzone's response meandered into various irrelevant facts, A.880-82,

before the judge tried to re-focus him:

> THE COURT: . . . I'm still trying to understand. So you have no knowledge and no basis for any reason to believe that the Trustee did anything other than determine that it was appropriate to participate in this [tender offer] or whatever it was.
>
> MR. FRANZONE: No. I do have lots of reasons.

A.882-83. But, when asked specifically to state even one "reason" the Trustee acted

in bad faith by selling the Coreweave shares, Franzone speculated about the Trustee

wanting to have the "protections of a 363," A.884, until the court tried [for the third

time] to bring him back to the question.

> THE COURT: You need to <u>tell me what it is that you believe I was not given information about, that I should have been given information about, in order to make the ruling</u>. . . .
>
> I asked you what you would have wanted to cross-examine the Trustee about, and you need to tell me specifically what you would have cross-examined -- not argument.
>
> MR. FRANZONE: What questions I would have asked.
>
> THE COURT: Or category of questions. What do you believe you needed to cross-examine the Trustee about at the hearing . . . <u>that would have had an impact on my ruling</u>, such that I would have to change it now?
>
> MR. FRANZONE: Okay. I have reason to believe that Greg Hersch was not on the board of directors of CoreWeave, as was represented at the time of the hearing at November 15th.
>
> THE COURT: So what?

16

A.883-85.[2] After explaining she did not consider Greg Hersch's status at Coreweave material to the Trustee's business decision to sell stock, A.886, the judge asked Franzone for the fourth time how he might show that the Trustee acted in bad faith: "THE COURT: … So what is the question that you would have asked Mr. Kapila?" A.886. In response to that direct question, Franzone launched a different attack on Hersch, with Franzone theorizing that the Hersch family, and others—who he described as "four parties who I mentioned in my document, for the estate or the deceased Dennis Hersch, . . . his estate or his widow, Gregory Hersch, and the two partners who abandoned their interests"—were "holding back and not tendering their shares" so the Trustee could sell more and Hersch would be paid out as a limited partner while still holding his personal shares. A.886-87. Franzone neither explained how the Bankruptcy Court could force Hersch to act differently nor how any of that speculation affected the Trustee's business judgment to sell the Coreweave shares in November 2023. So, the court astutely asked, "Why is that relevant to me?" A.887. Franzone's response to that clarifying question was difficult to follow:

> MR. FRANZONE: Well, if there's group bidding, and there's a -- if -- that could affect how many of the shares were sold. I read it appears that the reason for the sale, the business justification, was because the business, the estate, was administratively insolvent, which now, from the response, appears like that was not the reason.

---

[2] Neither at the January 2024 hearing nor in his Brief did Franzone explain the relevance of whether Greg Hersch was a CoreWeave director to the Trustee's business decision to sell assets for up to $77 million.

*Id.* The judge then tried to "skip to the chase" by summarizing what Franzone might

be saying:

> So you're concerned that the Trustee might have been able to get more
> than the $55 million that the Trustee has already received by
> participating in a tender offer, that was made open to other people, as
> well? Is that what you're concerned about?

*Id.* When handed that opportunity to get something on record just by saying "yes,"

Franzone instead detoured to complaining again about the April 2022 Hersch/Blake

Mallen Trust claim transfer that the court earlier explained was irrelevant to the

merits of the Trustee's business decision:

> MR. FRANZONE: It really is that the transfer, which was a claim
> transfer—and it looks like in Section 3.3 of the confirmation [*sic*]
> second amended plan, that it says that the list of equity holders was
> finalized and could not be amended—

A.887-88. The court noted Franzone was "way off topic," but still indulged him with

further at least a fifth opportunity to offer evidence of the Trustee's bad faith or abuse

of discretion in monetizing some of the Coreweave stock for $55.26 million. The

judge said:

> So far you have not been able to articulate to me any reason why
> <u>anything that the Trustee did</u>, or anything that the Court did <u>in</u>
> <u>connection with the relief granted</u>, was something that should be
> reconsidered.
> ***
> THE COURT: I'm going to give you one more chance to articulate . . .
> So you tell me -- I don't want to hear about the transfer that happened
> all that time ago, because you don't have an interest in either entity.

A.888. Again ignoring the entreaty to provide information relevant to the soundness of the Trustee's business decision, Franzone switched to a completely new topic, questioning why the hearing was sealed in the first place because it was unclear if "the info that was presented as trade secrets in Exhibit A of the motion for authority, 629, that came from a third-party vendor, PitchBook, actually came from CoreWeave, and was legitimately a trade secret or it was not." *Id.* Franzone then embellished his point by taking the opportunity to say more uncomplimentary things about Greg Hersch, telling the court:

> MR. FRANZONE: Because [the PitchBook] lists Greg Hersch on the board, and it appears like it was a day before Greg Hersch had to pay an SEC fine, and possibly that's what caused him to be removed from the board.

A.889 Despite Franzone's inability, if not steadfast refusal, to answer the court's questions, and his near-obsession with Greg Hersch, the judge indulged Franzone even further:

> THE COURT: Let's try something else. . . . I'm going to ask you one more time.
>
> What do you believe the Trustee did or did not do, such that I should reconsider my ruling? . . . So you're telling me that the Trustee should [not] have not participated in this [tender offer].
>
> So the Trustee should have stayed back, we're going to sit here and we're not going to take money that is needed to pay creditors and other parties in interest, we're just going to let everybody else take the money, and that's it. That's what your argument is?
>
> I just want to make sure I understand. That's your argument?

19

A.889-890. Franzone still could not or would not answer relevantly, or even "yes" or "no." Instead, he responded:

> MR. FRANZONE: An entity that I'm not representing now, but my general partner, which is not who I'm representing now, but that was not noticed as a claim holder with a claim that's still under objection, and a unlitigated portion of that is of variable interest in the Class 4 equity interest –

A.890. Finally, after affording Franzone more than a half-dozen opportunities to explain what the Trustee did wrong, the judge gave up trying to get Franzone to the point, telling him: "You're not answering my question . . . You have no argument for me that says that the Trustee should not have participated in the tender offer." . . . This was your opportunity to present that. You have not done so." A.890-891. The judge then accurately summarized the proceedings:

> THE COURT: . . . I have asked you specifically several times what is the basis for me reconsidering my ruling. All you said is you should have had an opportunity to cross-examine.

A.891. In response, Franzone began complaining about counsel's billing records, an issue not mentioned in any motion, not subject to court review or approval under the Confirmed Plans, and obviously irrelevant to the Trustee's business judgment in deciding to sell the Coreweave stock for up to $77 million. A.891-892 ("THE COURT: They're not relevant to this particular hearing and to this particular order.")

Counsel for the Trustee and U.S. Trustee then addressed the court and Franzone's attempt to inject into the case the Hersch/Blake Mallen Trust claim

transfer. The Trustee's counsel explained, "for Mr. Franzone's benefit," that who owns the claim is meaningless to any creditor or beneficiary. A.898. And the U.S. Trustee's counsel's confirmed:

> There was nothing at [the November 15] hearing that determined who would get what. There was no transfer to claim holders that was contemplated at that hearing.

A.901. Following those arguments, the judge again asked Franzone: "Have you thought of any possible reason why you would have a basis for asking me to reconsider approval of this transaction, which will pay all allowed claims in full, and provide a return to the equity investors?" A.901-02. Franzone offered nothing; he asked only that the court clarify which documents had been filed under seal. A.902.

After giving Franzone repeated opportunities to offer facts showing the Trustee's bad faith or abuse of discretion, the bankruptcy judge stated on the record that she was denying the Reversal Motion and explained:

> . . . I've given you your opportunity. You have not made any presentation or argument whatsoever why anything that the Trustee did, the manner in which the hearing was held, the role of the U.S. Trustee -- which believe me, before Mr. Gold [U.S. Trustee's counsel] came into the hearing, he did a complete analysis of everything that was submitted, because that's his job. So trust me, because I have seen him do it. If Mr. Gold had any concern or any questions for Mr. Kapila, he would have asked those questions and he would have raised those concerns. So, Mr. Battista, please prepare an order that states, "For the reasons stated on the record, the relief sought in ECF 649 is denied."

A.903-05. The Bankruptcy Court then entered the February 1 Order stating: "The

[Reversal] Motion is DENIED for the reasons stated on the record at the Hearing."

A.914.

### *The Notices of Appeal*

On February 15, 2024, Franzone personally timely filed the February Notice of Appeal [A.916] and the Leave Motion [ECF No. 670]. The Leave Motion was referred to this Court as Case No. 24-20610 ("First Appeal"). In response, the Trustee agreed the February 1 Order was a final order, and, on April 16, the Court granted the Leave Motion and entered a paperless order [ECF No. 688] administratively closing Case No. 24-20610. That same day, April 16, 2024, Franzone personally filed the April Notice of Appeal also appealing the February 1 Order. ECF No. 689. Although the First Appeal was initiated by the February Notice of Appeal, the Clerk opened Case No. 24-21430 [ECF No. 693] that was assigned to Judge Altman.

On April 30, 2024, Appellant Franzone "derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust" filed the April Notice of Appeal of the February 1 Order [A.921] ("Second Appeal").[3] The Clerk opened new Case No. 24-21683 and the Second Appeal was assigned to Judge Ruiz until it was transferred to Judge Altman and consolidated in this action. DE 10. Thus, Franzone is

---

[3] The Trustee disputes Franzone's authority to file any pleading derivatively on behalf of the FF Fund Liquidating Trust or the F5 Liquidating Trust.

individually prosecuting the First Appeal of the February 1 Order based on the February Notice of Appeal (and the redundant April 16 notice of appeal), and he is prosecuting the Second Appeal of the February 1 Order "derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust" based on the April Notice of Appeal.

On May 15, 2024, Franzone filed in both appeals an identical Rule 8009 Statement raising one issue: "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to Coreweave." Supp.A.165-66.

On July 15, 2024, Judge Altman transferred this action to Judge Gayles.

## SUMMARY OF ARGUMENT

Appellant is pursuing a near-frivolous appeal that fails to raise, and certainly fails to support, any colorable argument supporting reversal of the Coreweave Sale Order that resulted in the Trusts receiving $55.26 million. He makes three arguments, the first two of which (at a minimum) have been waived because they are neither raised in or inferable from Appellant's Rule 8009 Statement. That statement identifies one issue on appeal: "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to Core Weave, Inc." Supp.A.165-66.  It is settled that a "blanket" Rule 8009 Statement that merely questions whether the bankruptcy court "erred" is does not raise or infer any specific

grounds for error on appeal. Thus Appellant's generic Rule 8009 Statement waived the issues in Points A and B of Appellant's Brief, and those arguments—challenging the sealing of court filings and complaining about the Bankruptcy Court not reaching an argument unrelated to the Coreweave Sale Order—are not properly before the Court.

The two waived arguments also fail on the merits. When a party seeks to seal information that qualifies for protection under 11 U.S.C. §107(b), the court is required to grant the movant protection. The Bankruptcy Court did not abuse its broad discretion in determining that the Coreweave-related filings were confidential commercial information entitled to protection from public disclosure under §107(b). Appellant does not even contend the court was wrong about that; rather, he lamely argues the Bankruptcy Court somehow should have fashioned a way to make some information public. Appellant fails to suggest how that could have been done, or more importantly how that would have made a whit of difference. Had the Coreweave information been broadcast on national television, Franzone still could not have come to the November 15 hearing because of his criminal charges; and he has never pointed to even one fact that suggests the Bankruptcy Court should have rejected the Trustee's business decision to sell the Coreweave stock for a 30,900% return on investment. Appellant's sealing argument is baseless.

24

Appellant's Point B is a complete red herring. The Bankruptcy Court did not consider or decide the validity of any beneficial interest or claim transfer when it granted the Approval Motion and entered the Coreweave Sale Order. So, it is nonsensical to suggest the Court could not deny Appellant's Reversal Motion— which sought to reverse the Coreweave Sale permitted by the Coreweave Sale Order—before ruling on a wholly-separate issue: the validity of the Hersch/Blake Mallen Trust claims transfer. In fact, while Point B complains about the Bankruptcy Court not adjudicating Appellant's grievance about the claim transfer, Appellant does not argue that that is a basis for overturning the Coreweave Sale Order. So, Appellant effectively concedes that any hypothetical error in not reaching the claims transfer issue would be harmless error as to the February 1 Order declining to overturn the Coreweave Sale Order.

Finally, Appellant's Brief make no meaningful argument that the Trustee abused his discretion or acted in bad faith in deciding the sell the Coreweave stock— the underlined only substantive challenge Appellant made in the Reversal Motion. Rather, his Point C meanders from once procedural nit to another substantively irrelevant nat. Apparently, even Appellant has some limits; and it is nigh impossible to argue straight-faced that a Trustee—charged with representing investors who lost every penny they invested in two investment funds—who effectively is handed $77 million (or even $55.26 million) out of nowhere should take a pass. That is, however, what

Appellant must show on this appeal. His position is the stuff of alternative universes; it surely is not the stuff of an abuse of discretion by a court accepting the business judgment of a Trustee. The February 1 Order must be affirmed.

## ARGUMENT

I. **Appellant's first two arguments—challenging the sealing of the Coreweave Sale filings and transcript (Point A) and arguing that the Bankruptcy Court was required to make findings or conclusions about the "Hersch/Blake Mallen Trust claim transfer" in 2022 (Point B)—are not properly before this Court. They were not neither set forth in nor inferable from Appellant's generic Rule 8009 Statement that merely wonders whether the Bankruptcy Court "properly denied" Appellant's Reversal Motion.**

Upon appealing an order from the bankruptcy court, "[t]he appellant must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." The Eleventh Circuit has construed this Rule as follows: "An issue that is not listed pursuant to this rule and is not *inferable* from the issues that are listed is deemed waived and will not be considered on appeal." "To 'infer' means 'to derive by reasoning or implication,' 'to conclude from facts or from factual reasoning,' or 'to reason from one thing to another.'"

*Anjum v. Mukamal (In re Kumar)*, No. 15-CV-21159, 2016 WL 7178984, at *2-*3 (S.D. Fla. Dec. 9, 2016) (Gayles, J.) (citations omitted). There is no specific test for determining an "inferable" issue, but it is settled that "[a] blanket Rule 8009 statement 'that merely accuses the bankruptcy court of having "erred" is insufficient to infer specific grounds for error upon appeal.'" *Id.*, at *3 (citing *Seidling v. Kelly (In re Seidling)*, 611 F. App'x 668, 670 (11th Cir. 2015) (per curiam) (citation omitted)). And absent "exceptional circumstances, failure to comply with Rule

26

[8009] waives the omitted issue on appeal.'" *Id.* (citing *City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC* (*In re Am. Cartage, Inc.*), 656 F.3d 82, 91 (1st Cir. 2011)).

Appellant's Rule 8009 Statement is a quintessential "blanket" filing. It presents one issue for consideration: "whether the bankruptcy court properly denied" the Reversal Motion" Supp.A.165-66. The Rule 8009 Statement does not even "merely accuse the bankruptcy court of having 'erred.'" It does not identify any potential error or question any specific ruling; it simply raises whether the Bankruptcy Court was right when it denied the Reversal Motion. Under established law, the Rule 8009 Statement is insufficient to raise the first two issues argued in Appellant's brief: Point A challenging the sealing (for 30 days) of the Coreweave-related filings; and Point B attacking the Bankruptcy Court for not making findings and conclusions on the merits of Hersch/Blake Mallen Trust a claim transfer that is irrelevant to the Coreweave Sale Order. Neither argument was raised or inferred in the Rule 8009 Statement, and neither has anything to do with the Trustee's business judgment or the Coreweave Sale Order approving the Trustee's decision to participate in the Coreweave tender offer.

As to Point A, the generic statement—"whether the bankruptcy court properly denied" the Reversal Motion—neither raises nor infers a challenge to the Bankruptcy Court's separate (unappealed) orders sealing certain filings and

proceedings based on 11 U.S.C. §107. Those orders, entered before the Coreweave Sale Order, rest only on whether the sealed information falls within any category in §107(b). Moreover, on December 13, 2023, with no objection by the Trustee, the Bankruptcy Court granted on the record Appellant's *sua sponte* request to unseal the filings two weeks <u>before</u> Appellant filed the Reversal Motion. So, Appellant's first argument is not properly before this Court on appeal based on Appellant's Rule 8009 Statement.

Appellant's Rule 8009 Statement also indisputably failed to raise or infer any error regarding "Hersch/Blake Mallen Trust claim transfer." The validity of that 2022 transfer is relevant <u>only</u> to who is entitled to a subsequent distribution as a beneficial interest holders; but the identities of beneficiaries (or even the amounts of allowed claims) have nothing to do with the only issue decided in the Coreweave Sale Order: whether Trustee properly exercised his business judgment to sell the Coreweave shares in November 2023. Because who owns any beneficial interest is irrelevant to the Trustee's business judgment, it was not decided in the Coreweave Sale Order, was not appropriately raised in the Reversal Motion, and was not decided in the February 1 Order.[4] So the Rule 8009 Statement raising only whether the court

---

[4] The logical extension of Appellant's Point B is that if the Reversal Motion challenged the amounts of 30 limited partners' allowed claims—issues wholly separate from the business decision to sell Coreweave shares—the Bankruptcy Court would have been required to decide those unrelated issues before it could deny the

"properly denied" the Reversal Motion does not possibly infer a claim of error in not deciding the merits of the Hersch/Blake Mallen Trust claim transfer that occurred in 2022.

In *Kumar*, 2016 WL 7178984, the appellant's Rule 8009 statement read: "Did the Bankruptcy Court err in reducing and/or mis-characterizing the claims of Zafir Anjum?" *Id.*, at *3. Appellant then raised the following two issues in his brief:

> (1) "Did the Bankruptcy Court err in allowing Claim # 1-4 to the extent of $163,675 as a general unsecured claim instead of the asserted priority as a domestic support obligation?" and (2) "Did the Bankruptcy Court err in offsetting Mr. Anjum's claim with half of the proceeds of the sale of a house in Weed, CA, which house is not included in the bankruptcy estate?"

*Id.* The issue before this Court was "the sufficiency of Appellant's Designation of Record and Issues on Appeal [and] [t]he Court h[eld] that Appellant's appeal should be dismissed because the two issues raised by Appellant in his initial brief are not properly before the Court." *Id.* The same is true here.

*In re Seidling*, 611 F. App'x 668, also shows Appellant waived his first two arguments. There, a debtor "appealed to the district court [and] filed a Rule 8006 [now Rule 8009] statement of issues raising only one question: "whether 'the Court erred' in entering the order" challenged on appeal." *Id.* at 670. But, appellant on "appeal raise[d] several other issues, including: (i) the *sua sponte* overruling of

---

Reversal Motion. That is an absurd position that necessarily follows from Appellant's logic in Point B.

[appellant's] objection; (ii) lack of notice; (iii) denial of due process; (iv) the requirement of a trial on damages; (v) insufficient evidence to support the damage award; and (vi) punitive damages improperly awarded." *Id.*; *see Seidling v. Kelly, (In re Seidling)*, No. 14-21146-CIV, 2014 WL 11430871, at *4-*5 (S.D. Fla. June 27, 2014). Judge Altonaga noted that appellant's statement "frame[d] her issue as whether the bankruptcy court 'erred' in entering the long-on-words Final Judgment, and provide[d] no grounds by which error can be inferred." *Seidling v. Kelly*, 2014 WL 11430871, at *4. She held that the appellant had waived "any or all" issues argued in her brief. *Id.* The Eleventh Circuit affirmed, stating:

> We do not address the merits of these issues because, as the district court found, they have been waived. . . . "An issue that is not listed pursuant to [Rule 8009] and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal."
>
> When [appellant] appealed to the district court, she filed a Rule 800[9] statement of issues that raised only one question: whether "the Court erred" in entering the order. As the district court explained, "[a] statement of issues that merely accuses the bankruptcy court of having 'erred' is insufficient to infer specific grounds for error upon appeal."
>
> Accordingly, the district court did not err in holding these issues were waived.

*In re Seidling*, 611 F. App'x at 670 (citations omitted). Here too Appellant's Rule 8009 Statement generically presented one issue: whether the bankruptcy court "properly denied" the Reversal Motion that sought to set aside the Coreweave Sale Order. But Appellant's brief challenges procedural orders regarding public access to court documents and argues that the Bankruptcy Court had to decide the propriety

of a claim transfer in 2022 unrelated to either Appellant or the Trustee's business decision to sell the Coreweave stock. Those issues were waived.

As this Court has noted: "Rules are essential for the orderly processing of litigation, and a party's disregard of a rule, without good cause, ought not to be condoned." *Kumar*, 2016 WL 7178984, at *3 (quoting *City Sanitation*, 656 F.3d at 91). That principle requires the Court to reject as waived Appellant's first two arguments (Points A and B in the Initial Brief); they were not raised by or inferable from Appellant's Rule 8009 Statement stating only "whether the bankruptcy court properly denied" the Reversal Motion. Points A and B in Appellant's Initial Brief are not properly before the Court and must not be considered on this appeal.

**II.** ***Even if the bankruptcy court's sealing order had been properly raised in the Rule 8009 statements*, Appellant fails to show: (a) the sealing of filings prevented him from appearing at the November 15 hearing and objecting to the Coreweave stock sale; or (b) that the bankruptcy judge abused her discretion in sealing for 30 days the Coreweave Sale-related filings and transcript under 11 U.S.C. §107(b).**

The Bankruptcy Court found that the Coreweave-related filings were entitled to protection under §107(b), making it mandatory to seal the documents as requested by the Trustee; that finding is supported by record facts showing the filings disclosed confidential commercial information, and it is not clearly erroneous. Appellant cannot demonstrate that the sealing of the Coreweave filings was an abuse of discretion, and the sealing certainly does not affect the correctness of the Coreweave Sale Order or the February 1 Order denying the Reversal Motion.

31

***A. Franzone's argument that the sealing of filings prevented him from appearing at the November 15 hearing to question the Trustee or object to the Coreweave Sale is frivolous; Franzone admits he had notice of the hearing, but he could not travel to Miami because of his pre-trial release travel restrictions imposed in his criminal case.***

The sealing of Coreweave-related filings under §107(b) did not prevent Appellant—who was aware of the November 15 hearing—from seeking to appear at the hearing to question the Trustee or oppose the Approval Motion. But Franzone could not travel to Miami on November 15 for reasons <u>unrelated to the court allowing sealed filings</u>. He admitted that his pre-trial release travel restrictions prevented him from attending the November 15 hearing despite knowing it was scheduled. Supp.App.96. Any argument that the sealing of filings prevented Franzone from appearing at the November 15 hearing is a simply untrue. The argument simply ignores the real issue: there is no basis to even suggest the Trustee's decision to sell the Coreweave shares was an abuse of his discretion or bad faith.

At most, Appellant seems to complain that the Bankruptcy Court set a hearing on an expedited basis, and then did not postpone the November 15 afternoon hearing despite Franzone's letter to the judge. *See* Supp.A.96-97. Not only does that argument ignore the Trustee's time urgency, Franzone has waived the issue on appeal. He never appealed the Bankruptcy Court's order denying his "motion to postpone;" nor does Appellant's Rule 8009 Statement in any way raise or infer claimed error in either the expedited scheduling of the November 15 hearing or the

denial of Franzone's request for a 21-day postponement. *See* pp.26-31 *supra*. And, of course, the Bankruptcy Court afforded Franzone multiple opportunities at the January 16 hearing on the Reversal Motion to inform the court of any facts supporting his bad faith or abuse of discretion claims. A.875-89. So, Appellant's presence at the November 2023 hearing would not have changed the Bankruptcy Court's decision to enter the Coreweave Sale Order, and any claim of error is harmless. *See Johnson v. NPAS Sols.*, 975 F.3d 1244, 1254 (11th Cir. 2020) (if "misapplication of a Federal Rule doesn't deny a party the opportunity to present arguments that would have changed the outcome, the error is harmless"); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995) (failure to provide notice was harmless error where party could not point to "additional evidence, beyond the record . . . which would have precluded summary judgment). Appellant's Point A fails to demonstrate reversible error based on the bankruptcy court's orders sealing filings related to the Coreweave sale.

### B. Appellant misstates the applicable standard for sealing filings in bankruptcy cases and fails to demonstrate the Bankruptcy Court abused its broad discretion to protect information from public disclosure under 11 U.S.C. §107(b).

Appellant's argument effectively concedes the Coreweave-related information was confidential commercial information subject to protection under §107(b). He argues only that the Bankruptcy Court should have been tried to redact some documents rather than sealing them—but Appellant neither suggests what

33

redactions might have been made nor how the sealing for 30 days was reversible error. *See* DE 44 p.14 ("neither the trustee nor the Bankruptcy Court made any attempt to make public as much information as possible."). That argument in Point A fails to show that the Bankruptcy Court abused its discretion in sealing the Coreweave related filings and proceedings until after the sale was concluded.

### a. Appellant fails to address the Trustee's statutory right under 11 U.S.C. §107(b) to protection from disclosure of the Coreweave sale information.

At the outset, Appellant invokes the "right of access to judicial records under common law" to argue that the Bankruptcy Court erred by sealing a subset of filings and proceedings related to the Coreweave tender offer. DE 44 p.12 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007)). But the Trustee's Approval Motion [A.466-515] sought protection from public disclosure under 11 U.S.C. §107, which "displaces the common law right of access in the bankruptcy context." *Father M v. Various Tort Claimants* (*In re Roman Catholic Archbishop)*, 661 F.3d 417, 430 (9th Cir. 2011) (request to seal "scandalous or defamatory" material under §107(b)(2)); *accord Gitto v. Worcester Telegram & Gazette Corp.* (*In re Gitto Glob. Corp.)*, 422 F.3d 1, 8 (1st Cir. 2005) (§107 "supplants the common law for purposes of determining public access to papers filed in a bankruptcy case."). "In other areas of the law, courts have relied on showings of 'compelling reasons,' or balancing the

interests of privacy and public right to know, when reviewing a request for judicial non-disclosure. The mandatory language of §107(b) negates the need for such inquiries." *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995). Thus, "[u]nder §107, the strength of the public's interest in a particular judicial record is irrelevant; if the exception pertains, the bankruptcy court must issue a protective order on a motion by the affected person or party." *In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132, 2023 WL 349426, at *3–4 (Bankr. C.D. Cal. Jan. 20, 2023) (quoting *Father M*, 661 F.3d at 430–31). So, Appellant's reliance on a "common law" right of access to judicial records misses the point, and his failure to address §107(b) and Rule 9018 dooms his appeal on Point A.

> ### b. Section 107(b) requires that documents be sealed if they are confidential commercial information, and the bankruptcy court lacks discretion to deny protection if the statute is invoked.

Section 107(b) provides: "On request of a party in interest, the bankruptcy court <u>shall</u> . . . (1) protect an entity with respect to a trade secret, or confidential research, development, or commercial information." 11 U.S.C. §107(b)(1) (emphasis added).[5] "Section 107(b) . . . does not require the bankruptcy court to find

---

[5] Protection under §107(b) protection may be sought by motion filed under Bankruptcy Rule 9018, which provides in relevant part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity

a compelling interest or even good cause. Rather, upon determining that a movant has identified information that qualifies for protection under §107(b), the bankruptcy court *shall* protect the information." *Marigrove, Inc. v. Pinto (In re Transbrasil S.A. Linhas Aereas)*, 644 F. App'x 959, 962 (11th Cir. 2016) (court's emphasis) (citing *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 28 (2d Cir. 1994) ("When congress addressed the secrecy problem in §107(b) of the Bankruptcy Code it imposed no requirement to show 'good cause' as a condition to sealing confidential commercial information." (cleaned up)). So, §107(b) "eliminates a court's discretion by making it mandatory for a court to protect documents falling into one of the enumerated exceptions" in the statute. *Father M*, 661 F.3d at 430. *In re Dana Corp.*, 412 B.R. 53, 58 (Bankr. S.D.N.Y. 2008) ("if a paper falls within one of the express exceptions in §107(b), on the request of a party in interest, the bankruptcy court *shall* protect a person.") (citing *In re Food Mgmt. Grp., LLC,* 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007)).

Section 107 thus changes the analysis regarding confidentiality and public access in bankruptcy cases.

> In most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need. In the bankruptcy area, however, congress has established a special rule for trade secrets and confidential research,

---

in respect of a trade secret or other confidential research, development, or commercial information . . . ."

Fed. R. Bankr. P. 9018.

> development, and commercial information. . . . §107(b) "permits the court, on its own motion, and requires the court, on the request of a party in interest, to protect trade secrets, confidential research, development, or commercial information." Thus, if the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application.

*Orion Pictures,* 21 F.3d at 27 (2d Cir. 1994) (court's emphasis) (citations omitted).

*See Transbrasil, S.A.*, 644 F. App'x at 961 ("Some categories of information, however, are specifically excluded from the public record and must be protected by a bankruptcy court."); *Phar–Mor*, 191 B.R. at 679 ("if the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application.").

"[T]he [bankruptcy] court determines whether the subject documents fall within the provisions of §107(b) and the appropriate protective remedy if they do." *In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996). "The [bankruptcy court's] discretion lies not in whether a court may protect an interested party, but in whether the matters complained of fall within the exception and in what type of protective remedy is necessary under the facts of each case." *Phar–Mor, Inc.*, 191 B.R. at 679. Whether information falls within a protected category under §107(b) "presents a factual question reviewed for clear error." *Neal*, 461 F.3d at 1052, 1055 (considering whether document was protectable as "scandalous" under §107(b)).

So, the determinative analysis is whether the Bankruptcy Court abused its discretion in determining that the information related to the Coreweave Sale was confidential "commercial information" under §107(b)(1). The information clearly was confidential commercial information, and nothing in Appellant's brief remotely shows otherwise.

### C. The Trustee's consideration of the Coreweave tender offer involving consideration of confidential financial information received from Coreweave and the potential increase in the value of beneficial interests was confidential commercial information the Bankruptcy Court was required to seal on the Trustee's request.

To satisfy §107(b)(1), the moving party must only show "that the information it sought to seal [is] 'confidential' and 'commercial' in nature." *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 631–32 (Bankr. S.D.N.Y. 2023) ("Commercial information also includes 'situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on [business] negotiations, ultimately affecting the viability of Debtors.'") (citing *Orion Pictures*, 21 F.3d at 34). Because the statute protects a trade secret "or" confidential commercial information, "[c]ommercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)." *In re Borders Grp., Inc.,* 462 B.R. 42, 47 (Bankr.S.D.N.Y.2011) (same); *accord In re El Toro Exterminator of Fla., Inc.*, No. 05-60015, 2006 WL 2882519, at *3 n.3 (Bankr. S.D. Fla. July 6, 2006) ("Commercial information" is . . . subject to the protections of §107(b) even

38

if the commercial information does not meet 'the same level of confidentiality' as a trade secret.") (same). *See Transbrasil S.A.*, 644 F. App'x at 961 (§107(b)(1) "unambiguously identifies" two categories of information worthy of exclusion from the public record. The first category is "a trade secret." Separated from "a trade secret" by the disjunctive conjunction "or," the second category is "confidential research, development, or commercial information.").

"The purpose behind [§107] 'is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.'" *Robbins v. Tripp*, 510 B.R. 61, 66–67 (E.D. Va. 2014) (affirming order sealing report over trustee's objection) (citing *In re Georgetown Steel Co.,* 306 B.R. 542, 546 (Bankr. D.S.C. 2004)); *accord Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.*), 492 B.R. 162, 177 (Bankr. S.D.N.Y. 2013) ("Section 107 'protects parties from the release of information that could <u>cause them harm</u> or give competitors an unfair advantage.'"). So an interpretation limiting "commercial information" to "information that may give a debtor's competitors an unfair advantage . . . is too narrow." *In re Lomas Fin. Corp.*, No. 90 CIV. 7827, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (noting "[t]he same words 'commercial information' appear in Fed. R. Civ. P. 26(c)(7) and as used there include information related 'to the buying and selling of securities on the open market.'") (footnote omitted). In *In re Taiyo Corp.*, No. 93-41092, 1993 WL 13003867 (Bankr. S.D. Ga.

Sept. 30, 1993), the court extended the reasoning in *Lomas* to a non-public transaction and sealed an appraisal of a hotel the Debtor proposed to sell, explaining "that the information contained in the appraisal, if placed in the hands of the public generally, could clearly affect the market [for the hotel]." *Id.*, at *2. A movant need only show that commercial information, "if not sealed, may seriously harm the [trustee's] estate in the instant action," particularly where the movant is seeking protection "at least in part, the sake of their creditors." *In re Windstream Holdings Inc.*, 614 B.R. 441, 455 n.8 (S.D.N.Y. 2020) (sealing debtors' internal "critical vendor" list to avoid "possibly precipitating a 'run on the bank' in which [creditor group] all demanded immediate payment."); *see In re Nunn*, 49 B.R. 963, 965 (Bankr. E.D. Va. 1985) (sealing customer list because allowing "competitor access . . . would obviously have an adverse effect on [creditor]").

In *Lomas*, 1991 WL 21231, and applicable here, the district court found sealing proper where the bankruptcy court "could reasonably determine that allowing disclosure [of the subject filings] would put into the hands of members of the Creditors' Committee the ability to affect the market in which they might sell their claims," as well as the trading of Debtor's public securities. *Id.* at *2. The court thus protected parties from being induced to buy or sell claims with unequal information.

Here, on November 15, 2023, there were multiple bases for protection under §107(b). Information about the Trustee's opportunity to monetize the Coreweave stock a week later was akin to "inside information" that would instantly and significantly affect the value of beneficial trust interests, and public disclosure would create a risk of third-party claim traders "hoodwinking" beneficiaries unaware of the proposed transaction. The Bankruptcy Court understood that concern and the Trustee's interest in preserving the value of stakeholder interests as they existed at the time. A.523-24, 527, 550-5. It has long been settled that, even at common law, a "relevant factor[] to consider" in restricting access is whether public disclosure might facilitate an "illegitimate purpose" or allow one party to "gain unfair commercial advantage" over another. *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1235–36 (11th Cir. 2013) (citing *AbbVie Prods. LLC*, 713 F.3d at 62). Indeed, the Supreme Court has said sealing is appropriate to ensure that court records are not misused as "as sources of business information that might harm a litigant's competitive standing." *Warner Commc'ns*, 435 U.S. at 598 (citations omitted). Thus, the temporary sealing here served to protect the beneficial interest holders the Trustee is charged with protecting from being exploited by opportunistic claims traders proposing to buy interests from stakeholders unaware of the pending transaction for less than the expected resulting distributions.

In addition, an unsealed filing by the Trustee could have breached the Trustee's confidentiality obligations to Coreweave and jeopardized the Trustee's ability to participate in the tender offer and obtain up to $77 million, thereby risking all creditor payments and interest holder recoveries. A.527-28. In fact, even after the Trustee agreed on December 13, 2023, to have the seal lifted, Coreweave's counsel contacted the Trustee's lawyer "concerned about certain information that was unsealed." A.869n., 908. That information obviously was more sensitive before the tender offer was consummated. Clearly, as of November 15, 2023, the contemplated Coreweave Sale details were "confidential commercial information" under §107(b)(1) that the Trustee legitimately sought to temporarily seal, both to preserve the opportunity to monetize the Coreweave stock and to protect against speculators taking advantage of uninformed beneficial trust interest holders. The Bankruptcy Court was required under §107(b) to seal the information upon the Trustee's filing of the Rule 9018 motion.

As the Supreme Court explained almost 50 years ago, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. *Warner Commc'ns*, 435 U.S. at 598–99. Appellant has utterly failed to show that, in the time-urgent context of the proceedings below, the bankruptcy court abused its broad discretion by restricting public access to information about the Coreweave

42

tender offer until after the transaction was consummated and beneficiaries were protected by a temporary sale prohibition.

**III.**    ***Even if Appellant's Point B was not waived*: (a) the argument is meaningless as it does not seek reversal of the Coreweave Sale Order, the only relief adjudicated in the February 1 Order; and (2) any claimed error "regarding the challenged Hersch/Blake Mallen Trust claim transfer" would be harmless error because the ownership of a specific beneficial interest was not decided in the Coreweave Sale Order and is irrelevant to the reasonableness of the Trustee's business decision to sell the Coreweave stock.**

Appellant's Point B does not argue that the Coreweave Sale Order should be reversed; it argues only that "the matter must be remanded because the Bankruptcy Court failed to make any legal or factual findings regarding the challenged Hersch/Blake Mallen Trust claim transfer." DE 44 p.20 ("the Bankruptcy Court never actually ruled on whether Franzone had standing to bring that claim [challenging the 2022 claim transfer] or whether the claim had merit. So the matter must be remanded for a resolution <u>on those issues</u>."). The argument is another red herring that goes to an issue neither raised nor addressed in the Coreweave Sale Order that Appellant sought to "reverse" in the Reversal Motion. The issue does not support overturning the February 1 Order that did not concern or adjudicate the validity of "the challenged Hersch/Blake Mallen Trust claim transfer."

***A. The Bankruptcy Court properly declined to decide the merits of Appellant's challenge to the validity of the Hersch/Blake Mallen Trust because the issue was neither addressed nor decided in the Coreweave Sale Order Appellant sought to "reverse." In any event, the refusal to reach the merits of the claim transfer could not be reversible error because the issue would have no impact on the Bankruptcy Court's Coreweave Sale Order or the February 1 Order.***

The bankruptcy judge correctly determined that Franzone had no standing to challenge the Hersch/Blake Mallen Trust claim transfer, but she also properly refrained from deciding the validity of that claim transfer, leaving the issue for resolution by the Trustee as necessary. The only issue decided in the Coreweave Sale Order, and confirmed in the February 1 Order, was whether the Trustee's business decision to sell the Coreweave stock in November 2023 passed the "business judgment test." Indeed, at the November 15, 2023, hearing, the Trustee's counsel informed the Bankruptcy Court that the validity and amounts of beneficial interests based on limited partner claims were still unresolved, and that the specifics of any distribution were not before the court:

> MR. BATTISTA: <u>Once we figure out what all this means, in terms of a distribution, we'll come back to you</u>. To that point we [the Trustee and his professionals] have never scrubbed the limited partnership interest[s].

A.551. That was confirmed by the U.S. Trustee's counsel at the January 2024 hearing:

> MR. GOLD: . . . There was nothing at [the November 15] hearing that determined who would get what. There was no transfer to claim holders that was contemplated at that hearing.

A.901. Thus, whether Hersch as assignee or the Blake Mallen Trust owns a specific claim is irrelevant to the rulings in the Coreweave Sale Order and the February 1 Order. No decision in January 2024 "regarding the challenged Hersch/Blake Mallen Trust claim transfer," would have changed the Bankruptcy Court's decision in November 2023 to approve the Trustee's business judgment to sell the Coreweave stock.[6] Rather, even a cursory review of the January 2024 hearing transcript shows that Appellant's challenge to the claim transfer originated from his personal animus toward Gregory Hersch.

Appellant did <u>not</u> challenge the underlying claim originally belonging to the Blake Mallen Trust. Rather, he specifically invited the assignee Greg Hersch "to re-petition" the Trustee or the bankruptcy court to "re-transfer" the interest in what Appellant considered a "valid mechanism." A.739. So, the "validity of the Hersch/Blake Mallen Trust claim transfer" involves only whether Hersch or the Blake Mallen Trust will eventually be paid on account of a specific beneficial interest; but <u>who</u> might ultimately be paid a share of any distribution is patently

---

[6] It is beyond cavil that the Bankruptcy Court would not have considered the validity of the Hersch/Blake Mallen Trust claim transfer in November 2023 when deciding whether to approve the Trustee's business judgment in selling the Coreweave stock. So, Appellant cannot credibly argue that the Court was required to decide the issue in January 24 before confirming the Trustee's authority to sell as provided in the Coreweave Sale Order.

irrelevant to the Trustee's business decision <u>whether</u> to sell the Coreweave stock.[7] That decision is measured against the "business judgment test" requiring only that the Trustee has sound business reasons for effecting a sale. *See Teras Breakbulk*, 658 B.R. at 619 (S.D. Fla. 2024) (applying "business judgment test" to sale decision); *In re Knott*, 2015 WL 251705, at *2 (approving a sale merely requires a trustee to "establish sound business reasons for the terms of the proposed sale."). *See* pp.49-50 *infra*.

The Bankruptcy Court correctly declined to adjudicate in January 2024 the validity of the 2022 Hersch/Blake Mallen Trust claim transfer raised in the Reversal Motion, just as it surely would have done if the issue was raised in November 2023. So, if not adjudicating an irrelevant issue was somehow error (which it was not), it would be "harmless error" as to the Coreweave Sale Order and the February 1 Order. "An error is harmless if the [reviewing] Court can say "with fair assurance ... that the judgment was not substantially swayed" by it. *Udeh v. Winn-Dixie Montgomery, LLC*, 767 F. App'x 851, 854 (11th Cir. 2019) (citing *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). In reviewing for harmless error, an appellate court asks "whether the complaining Party's substantial rights have been

---

[7] As the Trustee's counsel explained at the January 2024 hearing: "whether Mr. Hersch owns the claim or the Blake Mall[e]n Trust owns the claim, it's the same to every other creditor and equity holder in the case." A.898.

affected" and whether alleged errors had "a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." *Johnson v. NPAS Sols.*, 975 F.3d 1244, 1253-54, 1255 (11th Cir. 2020) (quotations omitted). They were not, and it did not.

Here, the Hersch/Blake Mallen Trust claim transfer was not decided in the Coreweave Sale Order (because it was not before the court and had nothing to do with the Trustee's business decision to sell the Coreweave stock). So, the issue was not even properly raised in the Reversal Motion asking the Bankruptcy Court to "reverse" or unwind the Coreweave Sale based on the Trustee's alleged abuse of discretion and bad faith. The only issue material to both the Coreweave Sale Order and the February 1 Order is whether the Trustee's sale decision was supported by sound business reasons.

The Bankruptcy Court's decision not to rule on the claim transfer issue— presented for the first time in the Reversal Motion—was correct; and even if it were not, it would be harmless error that does not support a determination that the Bankruptcy Court abused its discretion in approving the Coreweave Sale proposed by the Trustee in his sound business judgment.

IV.   **The Bankruptcy Court's decision to accept the Trustee's business judgment that the Coreweave Sale was in the best interests of all interested parties is a factual finding this Court reviews only for clear error. The Bankruptcy Court did not shift any burden; Appellant utterly failed to provide any factual support for his reckless accusation that the Trustee acted in bad faith and abused his discretion in deciding to monetize $55.26 million of Coreweave stock.**

Although the Trustee had, under the Confirmed Plans and the LTA, the unfettered right to sell any Trust assets with <u>no hearing or court approval</u> (and without reference to any Bankruptcy Code provisions), the Coreweave Sale involved an unusual circumstance of a $77 million offer for assets that until then were of questionable and unknown value. So, in an abundance of caution, the Trustee sought court approval of the Coreweave Sale under 11 U.S.C. § 363. The Bankruptcy Court's factual findings that the Trustee had sound business reasons for participating in the Coreweave tender offer and that doing so was in the best interest of all interested parties were not clearly erroneous. Thus, the February 1 Order must be affirmed.

As this Court recently explained: "When evaluating a sale motion, the bankruptcy court will apply the "business judgment test." *Teras Breakbulk*, 658 B.R. at 619 (citing *Chira v. Saal* (*In re Chira*), 367 B.R. 888, 898 (S.D. Fla. 2007); *In re Knott*, 2015 WL 251705, at *2). Although the standard for approving a trustee's sale decision "has been stated in different ways," approving a sale merely requires the Trustee to "establish sound business reasons for the terms of the proposed sale." *In*

*re Knott*, 2015 WL 251705, at *2. Because the Trustee is responsible to administer the Trusts for the benefit of all parties, "his judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met." *Id. See Off. Comm. Of Unsecured Creditors v. Bouchard Transp. Co. (In re Bouchard Transp. Co.)*, 74 F.4th 743, 750 (5th Cir. 2023) ("Section 363(b) incorporates the 'business judgment standard' from corporate law.") (citing *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011)); *In re Diplomat Const., Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012) ("The business judgment test is the prevailing rubric to evaluate [a] proposed transaction under § 363(b)(1), although it has been articulated in a variety of ways.").

In *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.,* 722 F.2d 1063 (2d Cir.1983), the seminal decision on the business judgment standard in bankruptcy cases, the court of appeals explained that the bankruptcy court must "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *Id.* at 1071. So, "[t]he business judgment standard in section 363 is flexible and encourages discretion. 'Whether the proffered business justification is sufficient depends on the case'" and the bankruptcy court's case-specific consideration of the entire context of the proceedings. *ASARCO*, 650 F.3d at 601 (citing *In re Cont'l Air*

*Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (quoting *Lionel Corp.,* 722 F.2d at 1071)). *See In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 514-15 (Bankr. N.D. Ala. 2002) (*Lionel Corp.* is "the leading authority for approving a sale" and it adopted the "business judgment test . . . which has been adopted by the vast majority of courts."). A sale order based on the Trustee's exercise of sound business judgment is reviewed only for abuse of discretion. *See Teras Breakbulk*, 658 B.R. at 619; *Fitzgerald*, 428 B.R. at 880; *In re Enron Corp.*, 335 B.R. at 27–28.

In granting the Approval Motion, the Bankruptcy Court considered the Trustee's proffer, found that the Coreweave Sale would result in all creditors being paid in full, all administrative expenses being satisfied, and all beneficial owners (formerly limited partners) being paid back at least 2x their original total investments—all in the context of what for years was an administratively insolvent estate. A.558. The Bankruptcy Court noted the U.S. Trustee's lack of objection to the sale, found the transaction was in fact "a bonanza" for investors, and referred to the "fiduciary obligations of the liquidating trustee" in specifically finding that the proposed Coreweave Sale was "an appropriate exercise of the fiduciary duties of the trustee to the beneficiaries of the trust." *Id.* Indeed, at the January 2024 hearing the U.S. Trustee's counsel said that, at the November 15 hearing, "I don't think there was really anything sensible for me to do, other than to enjoy the presentation from the point of view of just being a very successful estate." A.901.

At the January 2024 hearing, moreover, Appellant Franzone, despite Judge Isicoff's patient prodding, failed, indeed almost refused, to offer any evidence whatsoever to suggest the bankruptcy court abused its discretion or that the finding that the Trustee's decision served the best interests of the Estate was clearly erroneous. His Initial Brief follows suit, as Appellant never suggests there any material facts he might possibly show on remand when asked for the ninth, tenth, or twenty-fifth time how the Trustee acted in bad faith and why the judge abused her discretion. Appellant's "burden shifting" argument is not a serious argument; he surely knows that no facts support the serious and reckless charges he leveled against the Trustee. The Bankruptcy Court's February 1 Order should be summarily affirmed.

## <u>CONCLUSION</u>

The Bankruptcy Court's February 1 Order must be affirmed. Appellant has waived most of the arguments he makes. He has not and cannot show any facts that even suggest it was bad faith or an abuse of discretion for the Trustee to sell the Coreweave stock for $55.26 million. Indeed, it is almost weird for someone to suggest that the Bankruptcy Court should have prevented the Coreweave Sale, and it surely is bizarre to suggest the court should have undone the transaction in January based on Appellant's chaotic logic and utter failure to point to even one fact to support his bad faith claims. Of course, the standards here are clear error and abuse

of discretion. Appellant comes nowhere close to meeting his burden of showing reversible error.

Dated: November 4, 2024.

Respectfully submitted,

/s/W.Barry Blum
W. Barry Blum / FBN 379301
bblum@venable.com
Paul J. Battista / FBN 884162
pjbattista@venable.com
**VENABLE LLP**
*Attorneys for Appellee Soneet R. Kapila,*
*Liquidating Trustee of the Liquidating Trusts*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349.2300
Facsimile: (305) 349-2310

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 4, 2024, the foregoing document was filed on the Court's CM/ECF portal and served on all counsel and parties registered with CM/ECF.

/s/W. Barry Blum
W. Barry Blum

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), as incorporated by this Court's Local Rule 87.4(f), because it contains 12,990 words.

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5)(A), as incorporated by this Court's Local Rule 87.4(f), because it has been prepared with a minimum font size of 14-point Times New Roman, a proportionally spaced typeface.

*/s/W. Barry Blum*
W. Barry Blum
