# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:24-cv-21430-DPG

**Bankruptcy Case Nos.**
**Case No. 19-22744-BKC (LMI), Case No. 20-10996-BKC (LMI)**
**Jointly Administered Under (LMI) Case No. 19-22744-BKC**

Andrew Franzone, both individually and derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust,

*Plaintiffs-Appellants*,

**vs.**

Soneet R. Kapila, FF Fund Liquidating Trust, F5 Liquidating Trust,

*Defendants-Appellees*.

## APPELLEES' MOTION TO DISMISS APPEAL AS EQUITABLY MOOT AND FOR STATUTORY MOOTNESS

On Appeal from the United States Bankruptcy Court for the
Southern District of Florida, Miami Division

W. Barry Blum / FBN 379301
bblum@venable.com
Paul J. Battista / FBN 884162
pjbattista@venable.com
**VENABLE LLP**
*Attorneys for Appellee Soneet R. Kapila,*
*Liquidating Trustee of the Liquidating Trusts*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349.2300
Facsimile: (305) 349-2310

## PARTIES, ABBREVIATIONS, AND REFERENCES

In this Motion to Dismiss, the same abbreviations and references will be used as in Appellees's Response Brief as set forth below. Other references not included in the Response Brief will be as follows:

Appellant Andrew Franzone will be referred to as either "**Appellant**" or "**Franzone**."

Appellee Soneet Kapila, as Liquidating Trustee, will be referred to as "**Trustee**."

Record citations included in Appellant's Appendix [docketed as DE 44-1] will be to the specific page[s] of the Appendix in the form: "**A.____.**"

Record citations included in Appellee's Supplemental Appendix, filed with this Response Brief, will be to the specific page[s] of the Supplemental Appendix in the form: "**Supp.A.____.**"

Record citations to documents not in either Appellant's Appendix or Appellee's Supplemental Appendix will be to the specific docket entry in the Bankruptcy Court docket [Case No. 19-22744-BKC] in the form "**ECF ___**" or to the specific docket entry in the applicable district court action in the form "**DE ___.**"

References to key filings, other documents, or items cited extensively cited throughout this Response Brief will be as follows:

### *Docket Entries*

(i)    "**Approval Motion**" means the *Expedited Motion for Authority to Accept Tender Offer For Preferred Shares in CoreWeave, Inc., and Liquidate Some or All of Such Preferred Shares Pursuant to 11 U.S.C. 363* filed on November 14, 2023, as ECF 629 [A.466], seeking authority to sell the CoreWeave shares

(ii)    "**CoreWeave Sale Order**" is the Bankruptcy Court's Order entered November 17, 2023, as ECF 633 [A.532].

(iii)    "**Reversal Motion**" means the *Emergency Motion to Reverse Transactions Related to CoreWeave, Inc.* docketed as ECF 649 [A.735].

i

(iv) "**February 1 Order**" means the Bankruptcy Court's Order Denying Emergency Motion to Reverse Transactions Related to CoreWeave, Inc, entered February 1, 2024, as ECF 665 [A.913]

(v) "**February Notice of Appeal**" is the Notice of Appeal filed on February 15, 2024, as ECF 670 [A.915] by Andrew Franzone individually.

(vi) "**Distribution Motion**" means the *Liquidating Trustee's Motion (I) for Authority to make a Distribution in Full to Holders of Allowed Claims, (II) for Authority to make and Interim Distribution to Holders of Allowed Limited Partner Equity Interests, (III) to Establish Reserves for Disputed Claims, and (IV) for Related Relief* filed on July 16, 2024, as ECF 726 in the Bankruptcy Court docket.

(vii) "**Distribution Order**" means the *Order Granting Liquidating Trustee's Motion (I) for Authority to make a Distribution in Full to Holders of Allowed Claims, (II) for Authority to make and Interim Distribution to Holders of Allowed Limited Partner Equity Interests, (III) to Establish Reserves for Disputed Claims, and (IV) for Related Relief* entered on August 26, 2024, as ECF 757 in the Bankruptcy Court docket.

(viii) "**Distribution Appeal**" means the appeal of the Distribution Order currently pending as Case No. 24-cv-23485-DPG

*Other References*

(ix) "**CoreWeave**" means CoreWeave Inc.

(x) "**CoreWeave Sale**" is the sale in November 2023 by the Trusts of 182,245 shares of CoreWeave stock as part of a tender offer that was approved by the Bankruptcy Court in the CoreWeave Sale Order that is at A.532ff.

(xi) "**CoreWeave Sale Proceeds**" are the $55.24 million received by the Trustee as consideration for the CoreWeave Sale.

All emphases, denoted by <u>underscoring</u>, are added unless otherwise noted.

## **TABLE OF CONTENTS**

PARTIES, ABBREVIATIONS, AND REFERENCES ..............................................i

TABLE OF CONTENTS.......................................................................... iii

    INTRODUCTION............................................................................1

    BACKGROUND AND PROCEEDINGS.............................................3

    ARGUMENT.................................................................................10

    **I.**  This appeal must be dismissed because it is both equitably moot under Eleventh Circuit precedent and statutorily moot under 11 U.S.C. § 363(m)...........................................................................10

        A. *This appeal is equitably moot because the Trustee consummated the court approved CoreWeave Stock Sale, Appellant did not seek to stay the February 1 Order or the Distribution Order, and the Trustee has (with Appellant's approval) distributed a substantial part of the CoreWeave Sale Proceeds. Unwinding the CoreWeave Stock Sale, even if possible, would greatly prejudice hundreds of parties not before the Court and likely result in dozens of lawsuits* ...................................................................11

        B. *This appeal is statutorily moot because the sale of the CoreWeave stock was approved under 11 U.S.C. § 363 and consummated with buyers who paid the Trustee (as opposed to other willing sellers) $55.24 million, and Appellant has never sought to stay the February 1 Order or stay the subsequent Distribution Order or offered any evidence that the buyers did not act in good faith*...........16

CONCLUSION.....................................................................................18

CERTIFICATE OF COMPLIANCE........................................................20

CERTIFICATE OF SERVICE ..............................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Belkova v. PNC Bank, N.A. (In re Belkova)*,
No. 22-13786, 2024 WL 3069143 (11th Cir. June 20, 2024) ........................... 14-15

*Bennett v. Jefferson County*,
899 F.3d 1240 (11th Cir. 2018) ....................................................................11, 12n.

*Cargill, Inc. v. Charter International Oil Co. (In re Charter Co.)*,
829 F.2d 1054 (11th Cir. 1987) .............................................................................16

*Clear Channel Outdoor, Inc v. Knupfer (In re PW, LLC)*,
391 B.R. 25 (9th Cir. BAP 2008) ............................................................. 10,13,15-16

*Club Associates, In re*,
956 F.2d 1065 (11th Cir. 1992) ......................................................................... 12-13

*Florida Agency for Health Care Admininstration v. Bayou Shores SNF,
LLC (In re Bayou Shores SNF, LLC)*,
828 F.3d 1297 (11th Cir. 2016) .............................................................................11

*Katebian v. Ogier*,
654 B.R. 402 (N.D. Ga. 2023) ............................................................................12n.

*Matos, In re*,
790 F.2d 864 (11th Cir. 1986) ...............................................................................14

*Reynolds v. Servisfirst Bank (In re Stanford)*,
17 F.4th 116 (11th Cir. 2021) ...................................................................10,11,16,17

<u>Statutes</u>

11 U.S.C. § 363 ...............................................................................2,16,17,18

11 U.S.C. § 363(a) ....................................................................................4

11 U.S.C. § 363(b) ...........................................................................4,16,17,18

11 U.S.C. § 363(c) ................................................................................16,17

11 U.S.C. § 363(m) ........................................................................4,16,17,18,19

## INTRODUCTION

This appeal must be dismissed because it is both equitably moot and statutorily moot. The appeal is from the Bankruptcy Court's February 1 Order denying Appellant's Reversal Motion that sought to "reverse" the November 2023 CoreWeave Sale Order and upend the resulting $55.24 million CoreWeave Sale. The relief Appellant seeks here would require the Trustee to return the $55.24 million in CoreWeave Sale Proceeds to good-faith third-party buyers, and somehow require those third-party buyers—who were not before the Bankruptcy Court and are not before this Court—to return the CoreWeave preferred stock shares they purchased from the Trustee in November 2023. But, because Appellant did not seek a stay of the February 1 Order, the Trustee has, with court approval and Appellant's knowledge and agreement, already distributed over $19.41 million of the CoreWeave Sales Proceeds to creditors and to beneficial interest holders of the Liquidating Trust, including Appellant and his extended family. So, the Trustee cannot return the CoreWeave Sale Proceeds to the third-party buyers without also unwinding the recent court-approved distribution and retrieving the monies paid to over 100 beneficial interest holders.

In addition, there is no plausible way for the Court to require the third-party buyers who paid the Trustee the $55.24 million in CoreWeave Sale Proceeds to take back the money and return to the Trustee the CoreWeave preferred stock they bought

more than a year ago (assuming those parties still own such shares). These realities render the relief sought by Appellant impractical, indeed impossible, and the relief sought also would greatly prejudice third parties not before the Court. Not only is Appellant seeking to have the Trustee return funds the Trustee no longer has, but he seeks to have non-parties somehow be compelled to return the CoreWeave preferred shares they purchased from the Trustee. So, this appeal is equitably moot and should be dismissed. Alternatively, because the CoreWeave Stock Sale was approved under 11 U.S.C. § 363 and has been consummated, and a substantial portion of the sale proceeds have been distributed to about 110 creditors and beneficial interest-holders—with Appellant's approval—this appeal is statutorily moot, and it must be dismissed.

Appellant did <u>not</u> seek to stay the February 1 Order, post a bond, or otherwise seek to restrict the Trustee's use or distribution to interest holders of the CoreWeave Sale Proceeds. Moreover, the Bankruptcy Court, on August 26, 2024, granted the Trustee's Distribution Motion and authorized the Trustee to distribute to creditors and beneficial interest holders (essentially equity holders) up to $41 million of the CoreWeave Sale Proceeds. While Appellant filed long objections to the proposed distribution nitpicking certain amounts, Appellant actually argued in favor of the distribution of more than $40 million of the CoreWeave Sale Proceeds—relief that is irreconcilable with the relief sought on this appeal. Then, Appellant appealed the

Distribution Order but did <u>not</u> seek a stay, post a bond, or even propose some alternative means of superseding the Distribution Order. To the contrary, in seeking leave to appeal the Distribution Order, Appellant asked this Court to <u>require</u> (not just authorize) the Trustee to distribute $32.465 million to certain equity interest holders (including Appellant personally and several of his family members), and "authorize but not require" the Trustee to pay an additional $8.042 million to other equity holders. Thus, below and on the Distribution Appeal pending before this Court, Appellant has requested relief requiring or allowing the Trustee to distribute over $40 million of the CoreWeave Sale Proceeds that, on this appeal, Appellant seeks to have the Trustee return to the third-party buyers.

Also, based on the Bankruptcy Court's Distribution Order, the Trustee has in fact already distributed over $19.41 million to 110 creditors and interest holders (including Appellant and his family members), making it impossible to return the CoreWeave Sale Proceeds to the buyers (and to force the third-party buyers to return the preferred shares they purchased) as Appellant seeks on this appeal; and 107 beneficial interest holders (again including Appellant and his family) have accepted those distributions. If Appellant obtained the relief sought on this appeal (which is irreconcilable with other positions he has taken below and on the4 Distribution Appeal), those interest holders would have to refund the distribution payments, creating enormous tax and accounting issues, and likely resulting in a slew of

3

lawsuits with interest holders that do not support Appellant's position and that refuse, or are unable, to refund the amounts received.

For all these reasons and more, this appeal is equitably moot. It is also statutorily moot, because 11 U.S.C. § 363(m) provides that a court-approved sale of property under 11 U.S.C. § 363(a) or (b) to a third-party acting in good faith that is not stayed cannot be undone on appeal. The CoreWeave Sale Order was sought and entered under 11 U.S.C. § 363(b) and Appellant has never offered any evidence that the buyers acted in bad faith; so, this appeal also is statutorily moot.

## BACKGROUND AND PROCEEDINGS

1.  On November 14, 2023, the Trustee filed his Approval Motion seeking authorization under 11 U.S.C. § 363(b) to sell up to 250,000 shares of CoreWeave restricted preferred stock (for approximately $77 million) as part of a tender offer. A.466, 472-73 ¶¶16-18. The Bankruptcy Court granted the Approval Motion in the CoreWeave Sale Order. A.518-20.

2.  The November 2023 tender offer was oversubscribed, meaning there were more CoreWeave shares tendered for sale than the third-party buyers agreed to buy. The Trustee was able to sell only 182,245 of the 250,000 CoreWeave preferred shares tendered for sale (the "CoreWeave Stock Sale"). And other third-party sellers were unable to sell their tendered shares because of the share purchases allocated to the Trustee.

3.  Thus, in reliance on the CoreWeave Sale Order, the Trustee sold, and third-party buyers acquired from the Trustee, 182,245 CoreWeave preferred shares tendered by the Trustee (as opposed to other willing sellers); and those buyers paid the Trustee $55.24 million.

4.  On December 29, 2023, Appellant filed his Reversal Motion requesting that "the [CoreWeave Sale Order] authorizing the sale of shares of CoreWeave, ECF # 633, be reversed for bad faith and abuse of discretion by the" Trustee. A.735, 737. After a hearing on January 16, 2024, that Appellant attended, A.876, the Bankruptcy Court entered the February 1 Order denying the Reversal Motion. A.914.

5.  Appellant then appealed the February 1 Order, A.916, but did not seek a stay of the February 1 Order; nor did he propose to post a bond or otherwise supersede the February 1 Order or to restrict the Trustee's use or distribution of the CoreWeave Sale Proceeds that the Trustee would be required to disgorge if Appellant obtained the relief he seeks on this appeal (even assuming the third-party buyers could be forced to return the CoreWeave preferred shares they purchased).

6.  Following the CoreWeave Stock Sale and the February 1 Order, the Trustee, on July 16, 2024, filed his Distribution Motion seeking authorization to distribute from the CoreWeave Sale Proceeds up to $41 million to pay certain creditors in full and to make distributions to up to 125 (which ultimately was reduced to 119) beneficial interest holders. *See* Bankr. ECF No. 726. Those beneficial interest

holders include Appellant, entities he controls, and Appellant's extended family members. *Id.* Exhibit A. The Bankruptcy Court set a hearing on the Distribution Motion for August 20, 2024.

7.   In response to the Distribution Motion, Appellant filed two documents, a 33-page "Request for Information and Monitoring of the Liquidating Trustee Regarding Distribution Motion" and an 11-page "First Additional Supplement" to that "Request." Bankr. ECF Nos. 749, 755. Those filings largely rehashed Appellant's many historical grievances, including issues raised on this appeal regarding Gregory Hersch, the Blake Mallen Trust/Hersch transfer, and professional fee applications. ECF No. 749 ¶¶7-22, 41-42, 58. Appellant even raised an objection to the vote counting in 2021 for the Confirmed Plan that confirmed in June 2021 and was never appealed. *Id.* ¶¶25-26. And despite being titled a "Request for Information," Appellant made 12 separate "requests for relief" in the first filing. *See* ECF No. *Id.* ¶¶49-61.

8.   Ultimately, however, Appellant "respectfully request[ed] that the Distribution Motion [be] granted," albeit subject to multiple "Certifications" and "Disclosures," as well as required "confirmations" by the Trustee, the SEC, and the U.S. Trustee. *Id.* ¶60.

9.   Appellant, however, did <u>not</u> object to the proposed distribution based on the effect it would have on this appeal, even though the relief sought here would

require the Trustee to return, rather than distribute, the CoreWeave Sale Proceeds that were used to fund the court-approved distribution for which Appellant advocated.

10. Appellant then attended the August 20 hearing and told the bankruptcy judge that "hopefully the distribution motion is granted here," although Appellant wanted the court to impose certain procedures that he proposed to monitor the process. ECF No. 758, p.28. After that hearing, the Bankruptcy Court, on August 26, 2024, entered the Distribution Order granting the Distribution Motion and providing that the Trustee was "authorized, but not directed," to distribute $223,379 to creditors and up to $41 million to beneficial interest holders. Bankr. ECF No. 757. The Bankruptcy Court did not impose on the Trustee any of the procedures requested by Appellant.

11. Appellant did not seek to stay the Distribution Order; nor did he propose to post a bond or otherwise supersede the Distribution Order to restrict the Trustee's use or distribution of the CoreWeave Sale Proceeds that would have to be returned if Appellant obtained the relief he seeks on this appeal. Appellant, his entities, and his family members also received distributions of the CoreWeave Sale Proceeds based on the Distribution Order, yet none have offered to return those funds to the Trustee in connection with this appeal.

12. Notwithstanding speaking in favor of the distribution during the Bankruptcy Court hearing, Appellant, on September 9, 2024, filed a motion for leave to appeal the Distribution Order, Bankr. ECF No. 777, that is now before this Court in the Distribution Appeal as Case No. 24-cv-23485-DPG. In his motion for leave to appeal, Appellant states that the relief he seeks on the Distribution Appeal is to have the Trustee "directed," *i.e.*, required, to distribute $32.689 million of the CoreWeave Sale Proceeds to certain creditors and beneficial interest holders (which is more than the Trustee has distributed to date) and also "authorized, but not directed," to make another $8.042 million in distributions to certain other beneficial interest holders. *See* Case No. 24-cv-23485, DE 1.[1] That relief, if granted, would make even more impossible the relief Appellant seeks here.

13. Thus, although Appellant appealed the Distribution Order, he is arguing that the Trustee should be authorized to distribute over $40.7 million of the CoreWeave Sale Proceeds that Appellant seeks on this appeal to require the Trustee instead to use such funds to repay the third-party buyers of the CoreWeave preferred stock that generated such proceeds. So, Appellant's position on the Distribution

---

[1] The only beneficial interest holders Appellant does not insist be paid are those affiliated with Gregory Hersch, Appellant's former close friend and financial advisor.

8

Appeal is inconsistent and entirely irreconcilable with the relief sought on this appeal.

14. Reversing the February 1 Order and the CoreWeave Sale Order would demonstrably harm the third-party buyers that paid the Trustee $55.24 million— none of whom Appellant has brought into either this Court or the Bankruptcy Court—because they would somehow have to be forced to return the CoreWeave preferred shares they purchased over a year ago (assuming they still owned such shares) in an arm's length tender offer transaction. In addition, the relief Appellant seeks would, at least indirectly, prejudice the third-party sellers that tendered their shares in November 2023, but could not sell them because of the Trustee's tender.

15. Appellant's request to the Bankruptcy Court in the Distribution Appeal that the Trustee be required or authorized to distribute over $40 million of the CoreWeave Sale Proceeds is an independent basis for dismissing this appeal as equitably moot.  Simply stated, such relief is wholly inconsistent with the relief sought herein, which is to return those same proceeds to the third-party buyers in the CoreWeave Stock Sale.

16. Between October 16 and November 6, 2024, the Trustee, in reliance on the CoreWeave Sale Order, the February 1 Order, and the Distribution Order, exercised his business judgment to distribute over $19.56 million to creditors and 119 beneficial interest holders to ensure that non-tax-exempt interest holders would

have funds to pay taxes on any "phantom income" attributable to them from the CoreWeave Stock Sale.

17. The $19.41 million distributed (as well as $149,963 allocated to other beneficial interest holders who have not yet provided all required documentation) was funded by the CoreWeave Sale Proceeds that Appellant seeks on this appeal to have returned to the third-party buyers, who would presumably be required to return to the Trustee the preferred shares they purchased in November 2023.

18. Thirteen of the 119 interest holders to whom the Trustee distributed over $174,400 from the CoreWeave Sale Proceeds are ultimately either Appellant, entities he controls, or his family members.

## ARGUMENT

**I.    This appeal must be dismissed because it is both equitably moot under Eleventh Circuit precedent and statutorily moot under 11 U.S.C. § 363(m).**

"In bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory." *Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 121 (11th Cir. 2021) (quoting *Clear Channel Outdoor, Inc v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008). This case involves the latter two doctrines: equitable mootness and statutory mootness.

**A. This appeal is equitably moot because the Trustee consummated the court approved CoreWeave Stock Sale, Appellant did not seek to stay the February 1 Order or the Distribution Order, and the Trustee has (with Appellant's approval) distributed a substantial part of the CoreWeave Sale Proceeds. Unwinding the CoreWeave Stock Sale, even if possible, would greatly prejudice hundreds of parties not before the Court and likely result in dozens of lawsuits.**

Equitable mootness is, as the name suggests, a doctrine of equity that moots an appeal because of (1) the effects of a reversal on third parties who have relied on a bankruptcy court's order or (2) the complexity and difficulty of unwinding a contested transaction. If a third party has altered its position in reliance on a bankruptcy court's order or a transaction is simply too complex or difficult to unwind, an appeal may be moot as a matter of equity.

*Stanford*, 17 F.4th at 121. The doctrine is not jurisdictional; rather, it is a "discretionary doctrine that permits courts sitting in bankruptcy appeals to dismiss challenges . . . when effective relief would be impossible." *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC* (*In re Bayou Shores SNF, LLC*), 828 F.3d 1297, 1328 (11th Cir. 2016). Equitable mootness "seeks to avoid an appellate decision that would knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." *Id.* (internal quotation marks omitted). "As the leading bankruptcy treatises explain, its application turns on equitable and prudential concerns which focus on whether it is reasonable to entertain the contentions of the parties [here, only one party] challenging an order of the bankruptcy court." *Bennett v. Jefferson Cnty.*, 899 F.3d 1240, 1247 (11th Cir. 2018) (citing William L. Norton,

11

Jr. & William L. Norton III, 8 NORTON BANKR. LAW & PRACTICE § 170:87 (3d ed. 2018); 7 COLLIER ON BANKRUPTCY ¶1129.09[1] n.2 (16th ed. 2018)).[2]

This case is equitably moot because the relief Appellant seeks would be impossible to implement, would egregiously prejudice over a hundred third parties not before the Court, and would create myriad and complex legal and tax problems if parties were required to unwind not only the CoreWeave Stock Sale but also the court-approved distributions the Trustee made and the beneficial interest holders accepted in reliance on the CoreWeave Sale Order, the February 1 Order and the Distribution Order. Unwinding the CoreWeave Stock Sale is made particularly complex and prejudicial because the third-party buyers of the preferred stock somehow would have to be required to return the CoreWeave stock they purchased to the Trustee (assuming they still owned such stock)—even though they are not before this Court.

A "central" concern for equitable mootness is whether a court can "grant effective judicial relief" given the developments in the case. *In re Club Assocs.*, 956

---

[2] In that sense, the Eleventh Circuit has said: "The doctrine, then, does not reference actual mootness at all." *Bennett*, 899 F.3d at 1247 (11th Cir. 2018). *See Katebian v. Ogier*, 654 B.R. 402, 412–13 (N.D. Ga. 2023) ("Despite its name, equitable mootness 'bears no relation to "mootness." Indeed, in an equitably moot appeal, the relief sought is the opposite of moot—the consequences of granting it would be so great that they are deemed inequitable.'") (internal quotation marks omitted)).

F.2d 1065, 1069 (11th Cir. 1992). Thus, as the court explained in *PW, Inc*, 391 B.R.

25, cited favorably by the Eleventh Circuit in *Stanford*:

> Equitable mootness requires the court to look beyond impossibility of
> a remedy to "the consequences of the remedy and the number of third
> parties who have changed their position in reliance on the order that is
> being appealed." . . . "Courts have applied the doctrine of equitable
> mootness when the appellant has failed to obtain a stay and [although
> relief is possible] the ensuing transactions are too 'complex and
> difficult to unwind.'" "Ultimately, the decision whether to unscramble
> the eggs turns on what is practical and equitable."

*PW, Inc*, 391 B.R. at 33 (cleaned up; footnote and citations omitted). Here, as in *PW,
Inc.*, "[t]he changes that have taken place in connection with and since the closing

of the sale are numerous and complex, which calls into question whether this appeal

is equitably moot." *Id.* More than a hundred parties, including CoreWeave and the

third-party buyers who are not before this Court or the Bankruptcy Court, as well as

the beneficial interest holders, have altered their positions based on the Bankruptcy

Court's orders. The third-party buyers paid the Trustee $55.24 million in November

2023 for the CoreWeave preferred stock owned by the Liquidating Trust instead of

paying that money to other willing sellers who tendered their CoreWeave shares.[3]

Those third-party buyers would need to return such preferred stock to the Trustee if

---

[3] In that same vein, the parties that tendered their shares but lost the attempt to sell
because of the Trustee's tender were directly affected by the Bankruptcy Court's
approval of the CoreWeave Sale.

the relief sought herein were granted, although this Court has no jurisdiction over them to compel compliance with that requirement.

Beyond that, the Trustee has been authorized to distribute over $40 million and has actually already distributed $19.41 million of the CoreWeave Sale Proceeds, mostly to 107 beneficial interest owners that have accepted distributions that would have to be returned if Appellant obtained the relief sought on this appeal. An order unwinding the CoreWeave Stock Sale—the relief Appellant seeks here (while opposing it on other appeals)—thus would wreak havoc on dozens of third parties, creating an chaotic and inequitable situation that would improperly and unnecessarily require the unwinding of hundreds of transactions, affect investors in CoreWeave, and likely require every tax-paying beneficial interest holder to amend their 2023 federal and state tax returns—all to indulge what appears to be Appellant's quixotic grudge against a former close friend.[4]

This case is like *In re Matos*, 790 F.2d 864 (11th Cir. 1986), where the Eleventh Circuit "held that an appeal of a bankruptcy court order allowing a creditor to foreclose on property was equitably moot when the debtor failed to obtain a stay pending appeal and the property at issue had been foreclosed upon and sold while the appeal was pending. *See Belkova v. PNC Bank, N.A. (In re Belkova)*, No. 22-

---

[4] Notably, no other beneficiary has appealed the CoreWeave Sale Order, the February 1 Order, or the Distribution Order, and none have sought to join in Appellant's appeals under Fed. R. Bankr. R. 8002(a)(3).

14

13786, 2024 WL 3069143, at *2 (11th Cir. June 20, 2024) (citing *Matos*, 790 F.2d at 865–66). Here, Appellant seeks to set aside the CoreWeave Sale Order despite the sale being consummated and the Trustee already distributing (with Appellant's knowledge and approval) a significant portion of the CoreWeave Sale Proceeds (including payments to Appellant and his family members) using funds that Appellant on this appeal would have the Trustee return to the third-party buyers and then somehow force those third-party buyers to return to the Trustee the preferred stock they purchased (assuming they still owned the shares). Appellant thus seeks relief "that would knock the props out from under the authorization for every transaction that has taken place [in reliance on the CoreWeave Stock Sale] and create an unmanageable, uncontrollable situation for the Bankruptcy Court." *Bayou Shores*, 828 F.3d at 1328.

Finally, "[t]he policy behind mootness is 'to protect the interest of a good faith purchaser . . . of the property.'" *PW, Inc.*, 391 B.R. at 34 (citing *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir.2007)). Indeed, the court there noted the importance that the appellant had brought the purchaser of the property at issue before the appellate court—which is not the case here. Appellant has not made any effort to join either CoreWeave or any of the third-party buyers in the CoreWeave Stock Sale that he wants this Court to unravel. But even with the buyer before the court, the *PW, Inc.* panel noted that "there have been many subsequent actions that were relied on by

15

third parties that are not party to this appeal," *id.*, just like CoreWeave, the third-party purchasers of the CoreWeave shares, and the individual beneficial interest-holders who would face significant tax and other accounting problems after accepting distributions that would have to be rescinded if Appellant obtained the relief sought here. Such complexities and negative impacts on third parties make review of the validity of the CoreWeave Sale Order equitably moot.

For all of those reasons, this appeal should be dismissed as equitably moot.

**B. This appeal is statutorily moot because the sale of the CoreWeave stock was approved under 11 U.S.C. § 363 and consummated with buyers who paid the Trustee (as opposed to other willing sellers) $55.24 million, and Appellant has never sought to stay the February 1 Order or stay the subsequent Distribution Order or offered any evidence that the buyers did not act in good faith.**

Statutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute. As relevant here, Section 363(m) precludes an appellate court from reversing or modifying a bankruptcy court's authorization of a sale of a bankruptcy estate's property to someone who "purchased ... such property in good faith" under Section 363(b) or (c) unless the sale was "stayed pending appeal."

*Stanford*, 17 F.4th at 122 (citations omitted). *Accord Cargill, Inc. v. Charter Int'l Oil Co. (In re Charter Co.)*, 829 F.2d 1054, 1056 (11th Cir. 1987) ("once a sale is approved by the bankruptcy court and consummated by the parties, the bankruptcy court's authorization of the sale cannot be effectively altered on appeal."). Section 363(m) "'states a flat rule governing all appeals of section 363 authorizations.' By precluding the possibility of relief, Section 363(m) statutorily 'moots' appeals from

authorizations under Section 363(b) or (c), unless they are stayed. *Stanford*, 17 F.4th at 122 (citing *Charter Co.*, 829 F.2d at 1056). Like equitable mootness, statutory mootness under § 363(m) is not jurisdictional; while there is "appellate jurisdiction over appeals from Section 363 authorizations, they are barred by the Code from affording the relief an appellant seeks. Because a judicial opinion on the propriety of the transaction would therefore be advisory-only, . . . such appeals [are] statutorily "moot." *Id.* (citations omitted).

Approval of the CoreWeave Stock Sale was sought and granted under 11 U.S.C. § 363(b). So, 11 U.S.C. § 363(m) applies to make the appeal statutorily moot. That statute states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "'states a flat rule governing all appeals of section 363 authorizations' [and] it statutorily 'moots' appeals from authorizations under Section 363(b) or (c), unless they are stayed." *Stanford*, 17 F.4th at 122 (citing *Charter Co.*, 829 F.2d at 1056). The CoreWeave Sale Order granted the Trustee's motion for authorization under 11 U.S.C. § 363(b).

Pertinent to statutory mootness, Appellant arguably had <u>two potential opportunities</u> to avoid application of § 363(m). First, Appellant could have, in

February 2024, sought a stay of the February 1 Order or proposed to the Bankruptcy Court some means of superseding the Trustee's use or disbursement of the CoreWeave Sale Proceeds that Appellant now asks this Court to ordered returned to the third-party buyers. He did not. To be clear, the $32.65 million Appellant demands the Trustee distribute (including to Appellant and his family members) is the same money Appellant demands the Trustee return to the third-party buyers on this appeal. Thus, compounding the statutory bar under § 363(m), Appellant has knowingly advocated for a distribution that necessarily makes it impossible and certainly inequitable to unwind the CoreWeave Sale Order, which is the relief Appellants seeks on this appeal.

This case presents the precise situation covered by §363(m). Because Appellant did not seek or obtain a stay of the February 1 Order, or even seek a stay of the Distribution Order, the "flat rule" set out in § 363(m) precludes the relief Appellant seeks here—the reversal of the CoreWeave Sale Order authorizing the Trustee to sell the CoreWeave shares under 11 U.S.C. § 363. Statutory mootness thus is a separate and independent ground for dismissing this appeal as moot.

## CONCLUSION

The November 2023 CoreWeave Stock Sale was approved under 11 U.S.C. § 363(b) and was consummated between the Trustee and the third-party buyers in reliance on the CoreWeave Sale Order. In further reliance on the CoreWeave Sale

Order, the unstayed February 1 Order and the unstayed Distribution Order, the Trustee has now, with the knowledge and agreement of Appellant, and with Bankruptcy Court approval, distributed $19.56 million of the CoreWeave Sale Proceeds to creditors and beneficial interest holders. And over 100 beneficial interest holders, which include Appellant and his family members, have accepted those distributions in reliance on the Bankruptcy Court's orders, including the CoreWeave Sale Order that Appellant seeks to set aside on this appeal. Appellant is barred by 11 U.S.C. § 363(m) from seeking to overturn the CoreWeave Sale Order, so this appeal in statutorily moot. In addition, and independently, the relief Appellant seeks would uproot the Distribution Order and rain chaos down on the Trustee, the Bankruptcy Court, the third-party buyers who purchased the CoreWeave shares from the Trustee in November 2023, and the beneficial interest holders who would have to return the $19.56 million distributed to them, and recalculate their federal and state taxes as to the pass-through income attributed to them—even though only Appellant has appealed either the February 1 Order or the Distribution Order.  Thus, this appeal is also equitably moot.

WHEREFORE Appellee requests that this Honorable Court enter an order dismissing this appeal as equitably and statutorily moot and providing for all other appropriate relief.

Respectfully submitted,

*/s/W.Barry Blum*
W. Barry Blum / FBN 379301
bblum@venable.com
Paul J. Battista / FBN 884162
pjbattista@venable.com
**VENABLE LLP**
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349.2300
Facsimile: (305) 349-2310

*Attorneys for Appellee Soneet R. Kapila,*
*Liquidating Trustee of the Liquidating Trusts*

## CERTIFICATE OF COMPLIANCE

This Motion complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(A), and the typeface requirements of Fed. R. Bankr. P. 8013(f)(1), (2), both as incorporated by this Court's Local Rule 87.4(f), because it contains 4,642 words according to the word-count function of Microsoft WORD® and it has been prepared with a minimum font size of 14-point Times New Roman, a proportionally spaced typeface.

*/s/W. Barry Blum*
W. Barry Blum

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2024, the foregoing document was filed on the Court's CM/ECF portal and served on all counsel and parties registered with CM/ECF.

*/s/W. Barry Blum*

W. Barry Blum
