UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:24-CV-21430-DPG

**ANDREW FRANZONE**, both individually
and derivatively on behalf of the FF Fund
Liquidating Trust and the F5 Liquidating Trust,

       Appellant,

v.

**SONEET R. KAPILA**, *et al.*,

       Appellee.

_____/

Bky. Court Case Nos.:
19-22744-BKC (LMI)
20-10996-BKC (LMI)

Jointly Administered Under
No. 19-22744-BKC (LMI)

## TRUSTEE'S REPLY IN SUPPORT OF MOTION TO DISMISS APPEAL [DE 56] AND INCORPORATED MOTION TO STRIKE APPELLANT'S RESPONSE

Appellee Soneet R. Kapila ("Trustee"), liquidating trustee of the FF Fund Liquidating Trust and the F5 Liquidating Trust, files this Reply in support of his Motion to Dismiss Appeal [DE 56] (the "Mootness Motion") to address the points raised in the Response [DE 64] filed by Appellant Andrew Franzone ("Appellant" or "Franzone"). The Trustee also asks that the Response be stricken for non-compliance with Bankruptcy Rule 8013(f)(3).

### 1. *The Response does not comply with the Bankruptcy Rules and should be stricken.*

Appellant's rambling Response violates Rule 8013(f)(3), which limits a response to a motion to 5,200 words. Appellant fails to include the required certification, but a word-count of the Response converted to Microsoft WORD®

1

shows over 6,500 words, more than 1,300 words (or 25%) above the word limit for a response. Therefore, the Response should be stricken.

### 2. *The Response fails to address the issues raised by the Mootness Motion.*

Beyond violating the applicable rules, the Response consists largely of irrelevant screeds unrelated to the issues raised in the Mootness Motion that suggest Appellant does not understand the equitable and statutory mootness principles requiring dismissal. Appellant first incongruously claims the events mooting this appeal were both "well established" in December 2023 or February 2024 <u>and</u> were "self-created" since then. DE 64 p.2. But Appellant ignores the significance of the Trustee's Bankruptcy Court-approved distribution in October 2024 of $19.41 million of CoreWeave Sale Proceeds. That distribution to beneficial interest holders made it impossible for this Court to grant the relief sought here—an order "reversing" the CoreWeave Sale that would require the Trustee to return all $55.24 million CoreWeave Sale Proceeds the "Third Party Purchasers" paid the Trustee in November 2023. Appellant acknowledges he never sought to stay either the Bankruptcy Court's February 1 Order or the Distribution Order authorizing the Trustee to distribute up to $41 million of CoreWeave Sale Proceeds. Thus, Appellant's Response fails to address the core issue raised in the Mootness Motion.

Appellant instead whines that the sealing of documents in November 2023 somehow prevented him from moving to stay the February 1 Order. *Id.* pp.9-10. But

those documents were unsealed in December 2023, more than six weeks <u>before</u> any stay of the February 1 Order would have been filed. ECF No. 648. Appellant then glosses over his failure to seek a stay of the Distribution Order, and he has no "sealing" excuse for that because no documents or proceedings regarding the Trustee's Distribution Motion were sealed. Appellant cannot rebut the reality that he failed to even try to stay the orders upon which the Trustee and other parties have acted and relied; rather, he sat idle as subsequent events rendered this appeal equitably moot.

The undersigned admittedly cannot make sense of Appellant's tortured analogy to and discussion of "*forum non conveniens*" at pages 2-4 of the Response; nor does the Trustee see how Appellant's later appeals from various non-final orders are relevant to the Mootness Motion. Likewise, Appellant's difficult-to-follow lectures about how tender offers work, his unsubstantiated "history" of CoreWeave "buying shares of CoreWeave at a discount to their 'fair value' from unsuspecting parties like Appellee," or his mud-slinging about CoreWeave setting "a 'rigged' price" for its November 2024 tender offer have nothing to do with the Mootness Motion. DE 64 p.13. So too Appellant's diatribe about bad faith, his gratuitous lay opinion about "fair value" of the CoreWeave shares, and his absurd suggestion that it was "bad faith" to suggest in November 2023 "that $77 million was 'fair value' for" the 250,000 shares [*id.* pp.10, 13-14, 16] (even if tangentially addressing the

merits of the appeal) are wasted effort in "response" to the Mootness Motion. Appellant's "fair value" complaint is specious; he cites no record evidence that any other offer to Preferred Share owners existed, and the oversubscribed tender offer means there were more willing sellers than buyers in November 2023. Indeed, most of pages 9-16 of the Response are immaterial blather having nothing to do with the issues raised by the Mootness Motion. Still, perhaps inevitably, Appellant cannot resist a beside-the-point swipe at Gregory Hersch, his former close friend and financial advisor. *Id.* p.13.

### 3. *Appellant's argument that the relief sought will not affect third parties not before the Court is absurd.*

Franzone surely knows his "no third parties" argument at pages 15-16 is absurd. First, CoreWeave itself is a "third-party" that has never been before the Bankruptcy Court. The Response itself acknowledges that the 2023 tender offer was funded by new investors, so CoreWeave does not own the CoreWeave Shares sold in November 2023; indeed, Appellant specifically refers to the "Third Party Purchasers" that acquired the Trustee's CoreWeave shares, yet he shamelessly tells this Court: "no 'third parties' would be involved in the $55 million Reversal Transaction." *Id.* pp.11, 15. But the relief sought by Appellant—reversing of the CoreWeave Sale—necessarily would require the Court to order those non-party "Third Party Purchasers" to return the shares bought in November 2023, for which the Trustee would have to refund $55.24 million, requiring the Trustee to claw back

4

the $19.41 million from over 100 beneficial interest owners. Many beneficiaries would then have to amend their 2023 federal tax returns to adjust the income they reported from the 2023 CoreWeave Sale. Litigation would be inevitable. The cascading chaos "would knock the props out from under the authorization for every transaction that has taken place [in reliance on the CoreWeave Stock Sale] and create an unmanageable, uncontrollable situation for the Bankruptcy Court," which is precisely what the equitable mootness doctrine "seeks to avoid." *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC* (*In re Bayou Shores SNF, LLC*), 828 F.3d 1297, 1328 (11th Cir. 2016).

Franzone admits that the Trustee explained to the Bankruptcy Court that the tender offer was funded by third parties and not CoreWeave. DE 64 pp.10-13. In fact, the CoreWeave Sale Order authorized the Trustee "to liquidate any or all of the CoreWeave Preferred Shares" by tendering them "to CoreWeave's third party investor under the terms of the tender offer." A.533-34. And, on December 4, 2023, CoreWeave announced publicly that "it ha[d] closed a minority investment of $642 million led by Fidelity Management & Research Company, with additional participation from [six other identified investment firms] and others."[1] Those investors funded the $642 million in share purchases that included the Trustee's

---

[1]*See* https://www.prnewswire.com/news-releases/coreweave-announces-secondary-sale-of-642-million-302004604.html (last reviewed Jan. 7, 2025).

$55.24 million in Coreweave Sale Proceeds, and all of the named parties "and others"—none of whom are before this Court or the Bankruptcy Court—would be affected by any order granting the relief Appellant seeks on this appeal. Equitable mootness applies particularly "when the appellant has failed to obtain a stay and [although relief is possible] the ensuing transactions are too 'complex and difficult to unwind.'" *Clear Channel Outdoor, Inc v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008), *cited favorably in Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 121 (11th Cir. 2021).

4. ***Appellant's proclivity to object to everything and then appeal is prejudicing the beneficial interest holders whose interest he invokes; he is seeking only to further his personal interests at the expense of the investors he scammed.***

Appellant's argument at page 10 of the Response that the CoreWeave Sale Order was "not fully consummated" is also nonsense. The Sale Order [A.532] explained that the Trustee sought leave to sell "some or all of" the CoreWeave Shares, and that the Trustee was "authorized to liquidate any or all of the [250,000] CoreWeave Preferred Shares at the agreed tender offer price . . . under the terms of the tender offer and related documents." A.533-34. The Trustee did exactly that, tendering 250,000 shares but selling only 182,245, the amount possible "under the terms of the tender offer." A.466, 472-73 ¶¶16-18; A.518-20. The Sale Order did not, as Appellant would pretend, require the Trustee to sell 250,000 shares, because the Trustee informed the Bankruptcy Court that he might not be able to sell all such

shares. *See* DE 64 p.10. The CoreWeave Sale Order was fully consummated, no matter how badly Appellant twists facts or mischaracterizes the Sale Order language.

Appellant's suggestion at pages 3-5 that the Dismissal Motion was filed too late is factually and legally wrong, and it too shows Appellant does not understand equitable mootness. The Trustee's court-approved distribution of $19.41 million of CoreWeave Sale Proceeds (part of $41 million authorized for distribution) occurred in October-November 2024, not "7, or 11, or possibly even 18 months" before the Mootness Motion as Appellant hyperbolizes. DE 64 p.3. Appellant's complaint that the Trustee did not file the Mootness Motion in late-July 2024 (when reserving the right to do so in a filing) is especially rich, given how thoroughly Appellant had mucked up this matter by filing two motions [DE 6, 16] promising for months he was pursuing counsel through the Court's Volunteer Attorney Program (but never doing so) and filing multiple motions for extensions, to stay, or adjourn proceedings [DE 17, 20, 28, 33, 37] including a motion "to Have Options on Retaining Counsel and Filing of Briefing Papers" [DE 25]. The Trustee meanwhile has diligently pursued matters advancing the beneficial interest holders' interests in stark contrast to Franzone's incessant litigation campaign that has delayed further distributions and increased the Liquidating Trust's costs. Indeed, the Trustee's Distribution Motion was filed on July 16, 2024 [ECF No. 726], two weeks <u>before</u> the "reservation of rights" that agitates Appellant. The distribution that firmly establishes "equitable

mootness" had not yet occurred, although Appellant knew it was planned. Notably, Appellant did not object at the August 20, 2024 hearing to the distribution of about $33 million of CoreWeave Sale Proceeds, when he surely knew that made impossible the relief he now seeks requiring the Trustee to repay all $55.4 million to the "Third Party Purchasers."

Although Appellant wanders aimlessly off-topic for pages at a time, he returns to the timing of the Distribution Motion to make a narcissistic and outrageous argument that the Trustee proposed to distribute $41 million of CoreWeave Sale Proceeds just to be able to "use the equitable and statutory mootness arguments" against Appellant. *See* DE 64 p.17. Frankly, it is sad if Franzone actually believes the Trustee, Trustee's counsel, and the Court fixate on him the way Franzone obsesses about Gregory Hersch. But it is outrageous that Franzone—an indicted criminal defendant facing a host of SEC civil enforcement charges—suggests the Trustee, who has had a distinguished career as an advisor and fiduciary in hundreds if not thousands of distressed situations, would make a distribution for any reason other than to further the interests of beneficial interest holders. That distribution was the first payment to the interest holders that Appellant ripped off almost ten years ago. While Franzone's improper, ill-advised, and often frivolous filings require responses, his antics do not drive the Trustee's fiduciary decision-making. Indeed, the Trustee would have been able to distribute more than $19.41 million had

Franzone not filed this appeal and sought leave to appeal the Distribution Order. Notably, <u>no other party has appealed any order related to CoreWeave or objected to the distribution of the CoreWeave Sale Proceeds</u>. The unfortunate reality is that Franzone's quixotic effort to advance his personal interests vis-à-vis the Trustee is holding up a much more substantial return of funds to the beneficial interest holders Appellant pretends to care about. In truth, Franzone is victimizing those interest holders a second time.

### 5. *Appellant's position on other appeals concedes that this appeal is equitably moot.*

Appellant's actions surrounding the August 23, 2024, Distribution Order [ECF 757] approving a distribution of up to $41 million expose the hypocrisy in the Response. Specifically, Appellant first told the Bankruptcy Court he hoped nearly all $41 million would be approved, but he then sought leave to appeal the Distribution Order (without seeking a stay pending appeal). DE 1, Case No. 24-CV-23486-DPG. To the contrary, Appellant's motion for leave to appeal tells this Court to order the Trustee to distribute <u>at least</u> $13 million more of CoreWeave Sale Proceeds—the same funds that Franzone seeks on this appeal to have the Trustee repay to the "Third Party Purchasers" that funded the CoreWeave Sale Proceeds paid to the Trustee in November 2023. *Id.* p.2 (requesting that the Trustee be "directed, to make interim Distributions . . . of $32,465,479.00"). So, in Case No. 24-CV-23485, Appellant is seeking an order requiring the Trustee to distribute to beneficial

interest holders (including himself) $32.446 million of CoreWeave Sale Proceeds; but in this appeal, Appellant is still asking the Court to order the Trustee to return to the "Third-Party Purchasers" all $55.24 million of Coreweave Sale Proceeds. Those two positions are impossible to reconcile; indeed, they are nonsensical. But they are Appellant's positions.

This reality exposes Appellant's cynical and litigious strategy of opposing whatever the Trustee does, no matter how inconsistent or frivolous arguments his positions are. Franzone knows the Trustee has distributed $19.41 of CoreWeave Sale Proceeds because Appellant has willingly accepted over $174,000 paid to himself, affiliated entities, and family members. Franzone provides no record support, because none exists, that the Trustee has $55.24 million on hand, let alone additional amounts the "Third Party Purchasers" would demand as interest or damages. Surely, Franzone knows the Trustee could not return the $55.24 million to the Third-Party Purchasers even if this Court could possibly order the many Third-Party Purchasers (not parties to this appeal or the underlying bankruptcy) to unwind the transactions they consummated more than a year ago. Franzone also knows the relief he seeks would require the Trustee to claw back the distributed funds, upsetting another 100+ transactions, which would greatly prejudice and create federal income tax nightmares for the beneficial interest holders and inevitably lead to dozens of lawsuits. At bottom, Franzone just does not care.

## *Conclusion*

This appeal has become moot. Franzone did not stay the February 1 Order or the Distribution Order, and the Trustee has consummated hundreds of transactions that Franzone willy-nilly have cast aside. Franzone seeks to "reverse" the 2023 CoreWeave Sale, even though Trustee has distributed $19.4 million to over 100 beneficiaries and does not have the CoreWeave Sale Proceeds to return to the Third-Party Purchasers. Moreover, the Third-Party Purchasers are not even before this Court and could not be compelled to rescind their purchases. And even if those hurdles were surmountable, the Trustee would have to claw back the $19.4 million from over 100 parties that may or may not still have the funds, and dozens of those payees would have to amend their 2023 federal tax returns, creating personal or corporate crises for beneficiaries already victimized by Franzone. There is no way to grant the relief Appellant seeks without setting aside hundreds of transactions involving many millions of dollars that cannot possibly or practically be unwound without disrupting the underlying bankruptcy proceedings and prejudicing hundreds of beneficiaries and third parties not before the Court. Sadly, Franzone would have this Court turn the beneficiaries' glimmer of light that is the Trustee's actual and potential distributions into an oncoming train. That is what the equitable mootness doctrine seeks to avoid. This Court must dismiss this appeal.

Dated: January 14, 2025.

Respectfully submitted,

*/s/ W. Barry Blum*
W. Barry Blum / FBN 379301
bblum@venable.com
Paul J. Battista / FBN 884162
pjbattista@venable.com
**VENABLE LLP**
*Attorneys for Appellee Soneet R. Kapila,*
*Liquidating Trustee of the Liquidating Trusts*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349.2300
Facsimile: (305) 349-2310

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2025, the foregoing document was filed on the Court's CM/ECF portal to be served on all counsel and parties registered with CM/ECF, and a copy of the file-stamped document was sent by e-mail to Andrew Franzone at systems21@yahoo.com.

*/s/ W. Barry Blum*
W. Barry Blum

12

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), as incorporated by this Court's Local Rule 87.4(f), because it contains 2,557 words.

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5)(A), as incorporated by this Court's Local Rule 87.4(f), because it has been prepared with a minimum font size of 14-point Times New Roman, a proportionally spaced typeface.

*/s/ W. Barry Blum*
W. Barry Blum