# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:24-cv-21430-GAYLES

**Bankruptcy Case Nos.**
**Case No. 19-22744-BKC (LMI), Case No. 20-10996-BKC (LMI)**
**Jointly Administered Under (LMI) Case No. 19-22744-BKC**

**ANDREW FRANZONE, both individually**
**and derivatively on behalf of the FF Fund**
**Liquidating Trust and the F5 Liquidating Trust**,

       Plaintiffs-Appellants,

v.

**SONEET R. KAPILA, FF Fund Liquidating**
**Trust and F5 Liquidating Trust,**

       Defendants-Appellees.

_____/

### <u>ORDER</u>

**THIS CAUSE** comes before the Court on the Motion to Dismiss Appeal as Equitably Moot and for Statutory Mootness (the "Motion") filed by Appellee Soneet R. Kapila, the liquidating trustee of the FF Fund Liquidating Trust and the F5 Liquidating Trust (the "Trustee"). [ECF No. 56]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### BACKGROUND

In this consolidated bankruptcy appeal,[1] Appellant Andrew Franzone ("Appellant") seeks to unwind the Trustee's sale of CoreWeave Inc. ("CoreWeave") shares to third-party buyers. To

---

[1] This case consolidates two appeals, each from the Bankruptcy Court's February 1, 2024 Order Denying Emergency Motion to Reverse Transactions Related to CoreWeave, Inc. Appellant brought the first appeal individually. Appellant brought the second appeal derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust.

provide context as to why it is effectively impossible to undo the sale, the Court provides a brief recitation of the bankruptcy proceedings.

## I.    The Confirmation Order and Liquidating Trust Alternative

This appeal stems from two jointly administered Chapter 11 bankruptcy cases filed by FF Fund I, L.P. ("FF Fund I") and F5 Business Investment Partners, LLC ("F5") (the "Debtors"). On February 1, 2021, the Debtors filed Amended Plans sponsored by Appellant and FF Fund Management, FF Fund I's general partner (the "Amended Plans"). Article V of the Amended Plans proposed reorganizations dependent on a guarantee or exit financing from FF Fund Management. Article VI of the Amended Plans provided for a "Liquidating Trust Alternative" in the event FF Fund Management could not provide financial support. In the week before the confirmation hearing, Appellant was arrested on federal securities and wire fraud charges and the Securities and Exchange Commission brought a civil action against Appellant and FF Fund Management for securities fraud—leaving FF Fund Management unable to provide the requisite financial support.[2] As a result, the Debtors gave notice of their intent to proceed under the Liquidating Trust Alternative and filed the Confirmed Plans. On June 3, 2021, the Bankruptcy Court entered the Confirmation Order confirming the Confirmed Plans and implementing the Liquidating Trust Alternative. A.435.[3] The Confirmation Order was not appealed.

---

Appellant, however, cannot bring an appeal derivatively on behalf of the FF Fund Liquidating Trust or the F5 Liquidating Trust. *See In re: FF Fund I, L.P.*, Case No. 24-cv-23670-CMA [ECF No. 5] ("[B]ecause Appellant is not an attorney, he is unable to represent the ownership classes derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust." (internal citation omitted); *Ofer v. Roher*, No. 24-cv-22349, 2024 WL 3650383, at *2 (S.D. Fla. Jul. 9, 2024) (holding "that the rule restricting a corporation from appearing *pro se* applies equally to derivative suits . . . .") (internal quotation and citation omitted).

[2] Both matters remain pending in the Southern District of New York. *See United States v. Franzone*, Case No. 21-cr-00446-VSB (S.D.N.Y.); *Securities & Exchange Comm'n v. Franzone et al.,* Case No. 21-cv-03619-CM (S.D.N.Y.).

[3] Unless otherwise noted, references to the bankruptcy record, shall be to Appellant's Appendix, [ECF No. 44-1], in the form A.(Page Number) or Appellee's Supplemental Appendix, [ECF No. 49-1], in the form Supp.A.(Page Number).

The Confirmed Plans and the Liquidating Trust Agreement ("LTA") attached to both Plans gave the Trustee the powers to "hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets," and, in his "reasonable business judgment, to . . . liquidate, dispose of, and/or abandon the Liquidating Trust Assets . . ." A.307 ¶ E. The Confirmation Order authorizes the Trustee to "dispose of property . . . (except as otherwise set forth in the Second Amended Plans) without supervision or approval by the Court." A.455 § 8.  Moreover, the LTA gives the Trustee the rights to (1) "transfer, assign, or otherwise dispose of all or any part of the Assets[,]" *id.* at 339 § 5.1; (2) "[t]o determine when or on what terms Assets should be sold, liquidated or otherwise disposed of[,]" A.346 § 7.2(a); and (3) subject to the Confirmed Plans, "exercise all rights and powers granted to [him] without need of further Bankruptcy Court approval[,]" A.337 § 2.5.

## II.    The CoreWeave Sale

On the effective date of the Confirmed Plans, the Liquidating Trusts held illiquid interests in 47 privately held entities and unsecured notes from start-up entities and real estate partnerships. One of these investments was 250,000 preferred shares in CoreWeave that the Debtors had obtained at $1.00/share.

By mid-2023, the Estate was administratively insolvent. However, in late-October 2023, the Trustee had the opportunity to sell, as part of a third-party tender offer, the CoreWeave stock for over $309/share. As a result, there were proceeds to fully pay creditors and administrative expenses and distribute funds to beneficiaries at 2 to 3 times their total investment. Accordingly, on November 14, 2023, the Trustee filed an Expedited Motion for Authority to Accept Tender Offer for Preferred Shares in CoreWeave, Inc. and Liquidate Some or All of Such Preferred Shares

Pursuant to 11 U.S.C. 363 (the "Approval Motion").[4] A.466. On November 17, 2023, the Bankruptcy Court granted the Approval Motion (the "CoreWeave Sale Order"). A.532. The Trustee then sold to third-party buyers 182,245 CoreWeave preferred shares for $55.24 million.[5]

On December 29, 2023, Appellant filed an Emergency Motion to Reverse Transactions Related to CoreWeave, Inc., requesting that the CoreWeave Sale Order "be reversed for bath faith and abuse of discretion" by the Trustee (the "Reversal Motion"). A.737. On January 16, 2024, with Appellant in attendance, the Bankruptcy Court held a hearing on the Reversal Motion. The Bankruptcy Court denied the Reversal Motion (the "February 1 Order"). A.913. Appellant did not seek a stay of the February 1 Order.

On July 16, 2024, the Trustee filed a Motion (I) for Authority to Make a Distribution in Full to Holders of Allowed Claims, (II) for Authority to Make an Interim Distribution to Holders of Allowed Limited Partner Equity Interests, (III) to Establish Reserves for Disputed Claims, and (IV) for Related Relief (the "Distribution Motion"). [Bankr. ECF No. 726]. Though Appellant objected to some aspects of the Distribution Motion, in his response he "respectfully request[ed] that the Distribution Motion [be] granted" subject to limitations. [Bankr. ECF No. 749 ¶ 61]. On August 26, 2024, following a hearing, the Bankruptcy Court granted the Distribution Motion and authorized the Trustee to distribute to creditors and beneficial interest holders up to $41 million of the CoreWeave Sale Proceeds (the "Distribution Order"). [Bankr. ECF No. 757]. Appellant did

---

[4] The Trustee filed the Approval Motion under seal because of a non-disclosure agreement with CoreWeave and his concern that a public filing would enable third parties to obtain the shares at a discount to the detriment of beneficiaries. Appellant filed multiple appeals based on the sealed filings in the bankruptcy proceedings, most of which have been voluntarily dismissed. However, despite attempting to raise issues regarding the sealed filings in his initial brief, Appellant's Rule 8009 Statements for the consolidated appeals only identify one issue for appeal: "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to CoreWeave Inc." Supp.A. 165-66.

[5] The November 2023 tender offer was oversubscribed—meaning there were more CoreWeave shares tendered for sale than the third-party buyers agreed to buy—so the Trustee was only able to sell 182,245 of the 250,000 CoreWeave preferred shares.

not seek a stay of the Distribution Order or to otherwise restrict the Trustee's use or distribution of the CoreWeave Sale Proceeds.

On September 9, 2024, Appellant moved for leave to appeal the Distribution Order (the "Distribution Appeal"). *See* Case No. 24-cv-23485. In the Distribution Appeal, Appellant sought to have the Trustee distribute $32.689 million of the CoreWeave Sale Proceeds to certain creditors and beneficial interest holders. Appellant's requested relief in the Distribution Appeal—to distribute over $32 million of the CoreWeave Sale proceeds—was inconsistent with the relief requested here—to unwind the CoreWeave Sale entirely. On February 25, 2025, Appellant voluntarily dismissed the Distribution Appeal. *See* Case No. 24-cv-23485 [ECF Nos. 16 and 22].

Between October 16 and November 6, 2024, in accordance with the Distribution Order, the Trustee distributed over $19.56 million to creditors and 119 beneficial interest holders, including Appellant and his family members. [ECF No. 56 ¶¶ 16-18].[6]

## III.    This Appeal

On February 15, 2024, Appellant moved for leave to appeal the February 1 Order, resulting in the instant case. On April 30, 2024, Appellant, derivatively on behalf of the FF Fund Liquidating Trust and the F5 Liquidating Trust, filed a second notice of appeal of the February 1 Order. That case was consolidated with this action. Appellant raises the same issue in the consolidated appeals: "whether the bankruptcy court properly denied the emergency motion to reverse the transactions related to Coreweave." Supp.A. 165-66.

On December 3, 2024, the Trustee filed the instant motion, arguing this appeal is both equitably and statutorily moot. The Court agrees.

---

[6] The only other related appeal pending before the Court is Appellant's appeal of the Bankruptcy Court's decision to seal documents related to an order granting the Trustee authority to participate in a second tender offer of CoreWeave shares. *See* Case No. 24-cv-24454.

## DISCUSSION

### I.    This Appeal is Equitably Moot

"In bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory." *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021) (citation omitted). "Equitable mootness is, as the name suggests, a doctrine of equity that moots an appeal because of (1) the effects of a reversal on third parties who have relied on a bankruptcy court's order or (2) the complexity and difficulty of unwinding a contested transaction." *Id.* The doctrine "permits courts sitting in bankruptcy appeals to dismiss challenges (typically to confirmation plans) when effective relief would be impossible." *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1328 (11th Cir. 2016). "Central to a finding of mootness is a determination by an appellate court that it *cannot* grant effective judicial relief." *In re Nica Holdings, Inc.*, 810 F.3d 781, 786 (11th Cir. 2015) (quoting *First Union Real Est. Equity & Mortg. Invs. v. Club Assocs.* (*In re Club Assocs.*), 956 F.2d 1065, 1069 (11th Cir. 1992)). "The equitable mootness doctrine seeks to avoid an appellate decision that would knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Bayou Shores SNF, LLC*, 828 F.3d at 1328 (citation and internal quotation marks omitted). "Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable." *In re Baker & Drake*, 35 F.3d 1348, 1352 (9th Cir. 1994).

"Deciding whether a case is equitably moot requires a multifactor analysis . . . . No single factor is determinative, and a court must consider all the circumstances of the case to decide whether it can grant effective relief." *In re Nica Holdings, Inc.*, 810 F.3d at 786–87 (citations and internal quotation marks omitted). Factors a court will consider include "whether the appellant has

obtained a stay pending appeal, whether [the transaction][7] has been substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant." *In re Hazan*, 10 F.4th 1244, 1252 (11th Cir. 2021). "The facts will weigh in favor of finding equitable mootness when allowing an appeal to go forward will impinge upon actions taken to one's detriment in good faith reliance on a final and unstayed judgment." *Id.* (citation omitted).

The Court finds that the doctrine of equitable mootness warrants granting the Motion and dismissing the instant appeal. First, Appellant did not request a stay of the CoreWeave Sale Order, the February 1 Order, or the Distribution Order. As a result, the Trustee proceeded with the bankruptcy court authorized sale and distribution. *See In re: JMC Memphis, LLC*, 655 F. App'x 802, 805 (11th Cir. 2016) (finding appellant's failure to request a stay "significant" in its decision to affirm dismissal of an appeal based on the doctrine of equitable mootness); *In re Matos*, 790 F.2d 864 (11th Cir. 1986) (finding appeal of bankruptcy court order permitting creditor to foreclose on property equitably moot where debtor failed to obtain stay and the property had already been sold); *Bennett v. Jefferson County, Alabama*, 899 F.3d 1240, 1252 (11th Cir. 2018) (finding appeal equitably moot where the debtor and others had "taken significant and largely irreversible steps in reliance on the unstayed plan confirmed by the bankruptcy court."). Therefore, Appellant's failure to timely obtain a stay of the CoreWeave Sale Order, the February 1 Order, or the Distribution Order warrants finding this appeal equitably moot.

---

[7] Though many cases address whether the plan has been substantially consummated, *see e.g. In re Hazan,* 10 F. 4th at 1252, courts have also applied the doctrine to appeals relating to a sale of assets. *See Belkova v. PNC Bank, N.A.*, No. 22-13786, 2024 WL 3069143, at *2 (11th Cir. June 20, 2024) (finding review of final judgment in bankruptcy adversary action allowing bank to foreclose on property equitably moot); *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008) (finding review of the sale of certain assets sold by a trustee equitably moot); *Dominion Res. Black Warrior Tr. v. Walter Energy, Inc.*, No. 2:16-CV-00058-RDP, 2016 WL 3924227, at *4 (N.D. Ala. July 21, 2016) (finding review of rejection and sale orders equitably moot).

Beyond Appellant's failure to request a stay, the CoreWeave sale has been completed, distribution is well underway, and the interests of third parties would be adversely affected if the Court were to grant the relief Appellant requests. Indeed, "[u]nwinding the consummated [sale and distribution orders] would result in precisely the nightmarish situation that the doctrine of equitable mootness exists to avoid." *Musilino v. Ala. Marble Co., Inc.*, 534 B.R. 820, 829-30 (N.D. Ala. 2015) (internal quotation omitted). CoreWeave, the third-party buyers, and beneficial interest holders have all altered their positions based on the Bankruptcy Court's Orders. The third-party buyers paid the Trustee $55.24 million for the CoreWeave preferred stock owned by the Liquidating Trust rather than paying that money to other willing sellers who tendered their CoreWeave shares. To unwind that transaction, those third-party buyers—who are not before this Court—would need to (1) still hold their shares and (2) willingly return those shares to the Trustee. *See In re PW, LLC.,* 391 B.R. 25, 34 (9th Cir. BAP 2008) (finding appeal equitably moot where "there [were] many subsequent actions that were relied on by third parties that are not a party to [the] appeal."); *Stanford*, 17 F. 4th at 121 ("[i]f a third party has altered its position in reliance on a bankruptcy court's order or a transaction is simply too complex or difficult to unwind, an appeal may be moot as a matter of equity."). And, complicating any undoing of the CoreWeave Sale is the $19.4 million that the Trustee has already distributed to 110 creditors and interest holders, including Appellant and his family. In short, it is simply not practical, equitable, or, frankly, possible, to "unscramble the eggs" and reverse the CoreWeave sale. *In re Baker & Drake*, 35 F.3d at 1352. Accordingly, the Court finds that this appeal is equitably moot.

## II.    This Appeal is Statutorily Moot

Unlike equitable mootness, "[s]tatutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute." *Stanford*, 17 F. 4th (11th Cir. 2021).

Section 363(m) of the bankruptcy code "precludes an appellate court from reversing or modifying a bankruptcy court's authorization of a sale of a bankruptcy estate's property to someone who 'purchased . . . such property in good faith'" under Section 363(b) or (c) unless the sale was 'stayed pending appeal.'" *Id.* (quoting 11 U.S.C. § 363(m)). Section 363(m) "states a flat rule governing all appeals of section 363 authorization' [and] it statutorily 'moots' appeals from authorizations under Section 363(b) or (c), unless they are stayed." *Id*.

Here, the CoreWeave Sale Order granted the Trustee's motion for authorization under 11 U.S.C. § 363(b). Appellant did not seek a stay of the CoreWeave Sale Order or the February 1 Order. As a result, Section 363(m) precludes the relief Appellant seeks in this appeal—namely the reversal of the CoreWeave Sale Order. Therefore, this appeal is also statutorily moot and must be dismissed.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Appellees' Motion to Dismiss Appeal as Equitably Moot and for Statutory Mootness, [ECF No. 56], is **GRANTED**;

2.      This appeal is **DISMISSED**;

3.      This action is **CLOSED**, and all pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of March, 2025.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE